# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## HODGES v. COMMONWEALTH.

### July 6th, 1892.

1. HOMICIDE—*Record of indictment.*—It is a sufficient record of the finding of an indictment, where the order-book contains an entry that the grand jury returned into court and presented " an indictment against O. H. for murder—a true bill."

2. IDEM—*Juror—Motion to set aside verdict.*—Where, after verdict of guilty of murder in the second degree, a juror, on motion to set aside the verdict on the ground of previously-expressed opinion, admitted he might have said the prisoner "would be," but denied saying she " should be " hung, and said he did not then know he had been put on the *venire;* that he never expressed an opinion as to her guilt or innocence; that his sympathies were with her, and that he at first favored fixing her imprisonment at the lowest term—

HELD:

   The motion was properly overruled.

3. IDEM—*Case at bar.*—Upon consideration of the evidence disclosed by the record,

HELD:

   The verdict of guilty of murder in the second degree should not be disturbed.

4. IDEM—*Instructions.*—When there is no evidence whereon an instruction can rest, the trial court should refuse to give it to the jury.

5. IDEM—*Evidence.*—In the trial evidence was offered by the prisoner that several months before the homicide the deceased had made an assault upon her with intent to commit a rape.

HELD:

   Inadmissible.

Error to judgment of circuit court of Franklin county, rendered at its May term, 1891, whereby the plaintiff in error, Octavia Hodges, was, in accordance with the verdict of the jury at the trial of an indictment against her for the murder

of one R. J. Cunningham, sentenced to confinement in the
penitentiary for the term of six years. Opinion states the
case.

*Dillard & Dillard*, for plaintiff in error.

*Attorney-General R. Taylor Scott*, for commonwealth.

LACY, J., delivered the opinion of the court.

The first error assigned here is that the court erred in over-
ruling the motion of the accused to quash the indictment, be-
cause the finding of the grand jury upon the indictment was
not recorded, as is held to be necessary in *Cawood's Case*, 2
Va. Cas. 527; *Price's Case*, 21 Gratt. 864. This case, in
that respect, is not defective. The record shows that the
grand jury returned into court, and presented " an indictment
against Octavia Hodges for murder—a true bill "; which
indictment is recited. The circuit court did not, therefore,
err in this action, as the finding of the grand jury was duly
recorded.

The second assignment of error is as to the exclusion by
the court of the testimony of a witness, Edwards, as to a
transaction occurring several months before the homicide in
question, and now under investigation, and in no way con-
nected with it. The bill of exceptions shows as to this that,
on the trial of the cause, the prisoner introduced one Henry
Edwards as a witness in her behalf, and the following ques-
tion was asked him by counsel for the prisoner: " Question.
State whether or not, some time in the month of March,
before the homicide under consideration, you were at the
house of the prisoner, and saw any conduct on the part of the
deceased towards prisoner that indicated a purpose on the
part of the deceased to make an assault upon her, for the pur-

pose of committing rape upon her, and state fully the conduct of deceased and prisoner on that occasion? (To which the attorney for the commonwealth objected, and the court, after sending the jury to their room, required the witness to answer the question.) Answer. Can't say what his intentions were. Heard the cries of the lady of the house and the child. I went over—Cunningham was rushing Octavia to the corner—and took him away from her at once. He had a long knife in his hand. She was hollering when I went in. He swore in some words, ' I mean to have my time with you,' or something like that. He was drunk. He had been there on a drunk about three weeks. I carried him away next morning to Union Hall." And thereupon the court sustained the objection to the question, and would not allow same to be asked before the jury, either before or after the prisoner testified—said motion to admit testimony of said Edwards being made both before and after prisoner testified; to which opinion of the court, refusing to allow said testimony, the prisoner excepts. This evidence was properly excluded by the court. The transaction occurred in March, and was in no way connected with the horrible homicide, which occurred in May, and was committed under altogether different circumstances.

The third assignment of error is as to the qualification of a juror, made after verdict, that the said juror had before the trial expressed an opinion as to the guilt of the accused. Our statute provides that " no exception shall be allowed against any juror, after he is sworn upon the jury, on account of age or other legal disability, unless by leave of court." Section 3155, Code Va. Section 3154 of the Code provides that " the court shall, on motion of either party in any suit, examine on oath any person who is called as a juror therein, to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is

sensible of any bias or prejudice therein ; and the party objecting to the juror may introduce any competent evidence in support of the objection ; and, if it shall appear to the court that the juror does not stand indifferent in the cause, another shall be drawn or called, and placed in his stead, for the trial of the cause." But, after verdict, if the party interested shall have failed to avail of this protection provided for him before verdict by the law, his objection is then to be determined by the court in its discretion, according to the merits of the question. In this case, after the jury had rendered their verdict, convicting the prisoner of murder in the second degree, and fixing her term of confinement in the penitentiary at six years, she moved the court to set aside the verdict of the jury and grant her a new trial, because, as she alleges, James DeWitt, one of the jurors, had previously said that he had formed and expressed an opinion in the case, and that she ought to be hung, and filed in support of her motion the following affidavit of Moorman Tatum :

"*Affidavit.*—This day personally appeared before me Moorman Tatum, and made oath that on Saturday last, the 9th day of May, 1891, he heard James DeWitt, who was a member of the jury who tried and convicted Octavia Hodges, who was charged with the murder of R. J. Cunningham, say that he had been summoned as a member of the jury to try the said Octavia Hodges, and that he could not serve because he had formed and expressed the opinion that the said Octavia Hodges ought to be hung.

" Given under my hand this, the 13th day of May, 1891.

" W. H. PERDUE, J. P."

And thereupon said juror, James De Witt, being in court, was duly sworn ; and, in answer to questions propounded, denied that he had told said Tatum what he alleges in his

affidavit, but admitted that he might have said at Snow
Creek, on the 9th of May, that she would be hung, but at
that time did not know that he was summoned on the *venire*
for her trial; that he had never made up or expressed any
opinion as to the guilt or innocence of the accused, and knew
nothing whatever of the case; that witness had no prejudice
against the prisoner, but felt very much for her unfortunate
condition, and all his sympathies were with her; did not
know her or deceased, and had never seen her until called on
the *venire;* that he at first favored fixing the term of her
imprisonment in the penitentiary at five years, which was as
low a term as any other man on the jury favored.   Where-
upon the court, being satisfied that no injustice had been
done the prisoner in the premises, overruled the motion, and
refused to set aside the verdict and grant a new trial; to
which opinion of the court overruling said motion the defend-
ant excepts.   It is clear, I think, that the accused was not
prejudiced by the impanelling of this juror, and that he was
a competent juror, and that there was no error on this ground
in the action of the court overruling this motion of the
accused.   *Puryear's Case,* 83 Va. 58; *Poindexter's Case,*
33 Gratt. 766.

The next assignment of error is as to the action of the court
in refusing the instructions asked for by the accused, and in
giving others asked for by the commonwealth, and giving still
others not asked for by either side, on the motion of the court.

The record shows that the prisoner moved the court to give
the following instructions—viz. :

"1. The court instructs the jury that all questions of mo-
tive, intent, and heat of blood are left exclusively to the jury,
and, though bare fear is not a justification of homicide,
timidity of disposition may be looked to by the jury in deter-
mining whether the accused had reasonable grounds to appre-
hend that she was in danger of great bodily harm.

" 2. The court instructs the jury that if a man, though in no great danger of serious bodily harm, through fear, alarm, or cowardice, kill another, under the impression that great bodily harm is about to be inflicted upon him, it is neither murder nor manslaughter, but self-defense.

" 3. The court further instructs the jury that, if they have reasonable doubt as to whether the prisoner thought she was in danger of great bodily harm, or upon any other material point, they must give the prisoner the benefit of said doubt, and find her not guilty.

" 4. The court further instructs the jury that a person need not be in actual imminent danger of his life, or of great bodily harm, before he may slay his assailant.  It is sufficient if he has a reasonable belief, from the facts as they appear to him at the time, that he is in such imminent danger.

" 5. The jury are further instructed that if a person believes that another intends to do him great bodily harm; that communicated threats have been made by the deceased against the prisoner; that the prisoner was at home, and that the deceased made demonstrations causing the prisoner to believe that the deceased intended to attack her—then the prisoner had the right to defend herself; and if, in so doing, it was necessary, or if it appeared to her to be necessary, to kill her antagonist, the killing is justifiable, on the ground of self-defense."

Which motion the court overruled, and to the opinion of the court in overruling said motion, and refusing to give said instructions, the prisoner, by counsel, excepted.

The court, at the instance of the commonwealth's attorney, gave the following instructions :

" 1. Murder is the unlawful killing of another, with malice, which may be express or implied, and is distinguished in Virginia as murder in the first and murder in the second degree.

" 2. Every homicide in Virginia is presumed in law to be murder in the second degree ;  and, in order to elevate the

offense to murder in the first degree, the burden of proof is on the commonwealth, and to reduce the offense to manslaughter the burden of proof is on the prisoner.

" 3. To constitute murder in the first degree, the prisoner must have been incited to the killing by malice, and the killing must have been wilful, deliberate, and premeditated killing on the part of the prisoner ; but a mortal wound, given with a deadly weapon, in the previous possession of the slayer, without any, or upon slight, provocation, is *prima facie* wilful, deliberate, and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances.

" 4. To sustain provocation as a defense to murder, it must · be shown that the prisoner, at the time of the fatal blow, was deprived of the power of self-control by the provocation received; and in deciding this question, whether this was or was not the case, regard must be had as to the character of the provocation, to the nature of the act by which death was caused, to the time which elapsed between the provocation and the act which caused death, to the prisoner's conduct during the interval, and to all the circumstances tending to show the state of her mind at the time she committed the offense.

" 5. Even the necessity relied upon to justify killing must not arise out of prisoner's own misconduct.

" 6. No provocation whatever can render a homicide justifiable, or even excusable. The lowest grade to which it can reduce homicide is manslaughter ; and, if the prisoner killed the deceased suddenly, without any, or without considerable, provocation, the law implies malice, and the killing is murder."

" The court further instructs the jury that the bare fear that one intends to ·commit murder, or other atrocious crime, however well grounded, unaccompanied by any overt

act indicative of. any such intention, will not warrant killing the party by way of prevention. There must be some overt act indicative of imminent danger at the time.

" 2. There must be some act by the deceased meaning present peril, or something in the attending circumstances indicative of the present purpose to make the apprehended attack. The act so done, or circumstances thus existing, must be of such a character as to afford a reasonable ground for believing there is a design for committing a felony, or to do some serious bodily harm, and imminent danger of carrying such design into immediate execution."

The court gave the following instruction of its own motion:

" If the jury believe from the evidence that the deceased did any act, or that the circumstances brought about by him were of such a character as to afford the prisoner at the bar reasonable ground for believing that the deceased designed to kill her, or to inflict on her great bodily harm, and there was imminent danger of carrying such design into execution, under such circumstances the killing would be excusable, although it may turn out that appearances were deceptive, and that there was no design on the part of the deceased to kill prisoner, or to do her great injury."

At the instance of the prisoner, by counsel, the court gave the following instruction :

" The court instructs the jury that justifiable homicide is the killing of a human being in the necessary, or apparently necessary, defense of one's self or family from great bodily harm, apparently attempted to be committed by force, or in defense of home, property, or person, against one who apparently endeavors, by violence or surprise, to commit a felony on either.

" The court further instructs the jury that, where a man is threatened with danger, the law authorizes him to determine, from appearances and the actual state of things surrounding

him, as to the necessity of resorting to force ; and, if he acts from reasonable and honest conviction, he will not be held criminally responsible for a mistake as to the actual danger, where other judicious men would have been mistaken ; for, when one man attempts to injure another, it gives the injured man the right to make use of such means to prevent injury as his behavior and the situation make necessary.

" The court further instructs the jury that where a person is attacked, and when, from the nature of the attack, he believes that there is a design to take life, or to do him great bodily harm, then the killing of the assailant under such circumstances will be excusable or justifiable homicide, although it should after appear that no injury was intended, and no real danger existed.

" The court further instructs the jury that, where killing takes place in a combat, in determining whether or not the prisoner thought she was in danger of great bodily harm, the jury ought to consider the relative strength and size of the parties."

The objection to these instructions is stated, in general terms, as follows : " Petitioner deems it unnecessary in her petition to enter into a lengthy discussion of the question of law embraced in the instructions she asked for, and which were refused by the judge. She deems them obvious and well-established principles of law, which ought to have been given to the jury, and the refusal of the court to give the instructions, as she believes, greatly operated in her conviction."

We perceive no error in the instructions given or refused. The court cannot be required to instruct juries on mere general, abstract principles of law, however correct, unless these principles are applicable to the case. But the accused in this case has no cause of complaint that her instructions were not all given, because those actually given upon

her motion cover every ground of defense to be found in them all; and the instructions given contain no error; and when they are all considered together the law is fully and correctly stated which is applicable to the case, and to every phase of it.

The next and last assignment of error is that the court erred in overruling the motion of the accused to set aside the verdict of the jury as contrary to the law and the evidence. In considering this question upon the evidence certified, upon the familiar principles of a demurrer to evidence, it is manifest that there is no error in this action of the court. The eye-witnesses to the homicide describe it as follows : The deceased and two other male companions were all day at the house of the defendant, playing cards and drinking intoxicating liquors, in which the woman participated without reserve. The de-ceased, who was in liquor to a certain degree, getting drowsy, laid on this woman's bed and went to sleep. He was a sewing-machine agent, and tried to sell a machine to one of his companions, and said he would leave one at the house of the witness (Frailin), and that he was going home with Frailin. When he waked from his sleep he seemed anxious to start— put his arms around his neck, and tried to pull him up, saying, "Let's go; let's go." Witness replied, "Wait a few minutes." Witness got up, when Greer, a man present, said, "Bill [meaning witness] is not going," and caught witness by the hand. Deceased asked Greer what he had to do with it. Prisoner then said to deceased, if he wanted anybody to go he had better go himself. Deceased replied, "I will go when I d——d please." Prisoner then said, "If you don't go, you had better go." Deceased replied, "No one can put me out." Greer then let go of Frailin, and Frailin took his seat on the bed. Prisoner seemed to get angry, and said, "If you don't go I will shoot you." Deceased said, "Shoot and be d——d." She went to the back part of the house, [room is meant], and he followed her, opening his coat and saying, "Shoot."

When she got to the trunk she took out the pistol.· When she first got the pistol . she did not seem to have room to shoot, but she sidled around, he following her, and telling her to shoot. When she snapped the pistol at him, witness got up, seeing there was going to be a difficulty; as he says, caught the deceased by the coat, and shoved him back, and shoved the prisoner back, and said, "Stop this." "She sorter dropped the pistol down by her side, and deceased seemed to be still pressing towards her, and raised up his eyes, and looked at her. It seemed to make her very mad. She put her hand on my shoulder, and said, 'Mr. Frailin, get out of the way,' and fired." Deceased fell instantly, and died immediately. The wound was such, having penetrated the great aorta, the largest blood-vessel in the body, as would cause death in five seconds, according to the medical witnesses. The ball passed entirely through the body, and lodged in the skin on the other side. The prisoner, Greer, prisoner's mother, and Fanny, her sister, were playing cards and betting, and witness Frailin was staking Octavia, the prisoner, and had exhibited $250 or $275 in money there that day. The deceased, from first to last, made no demonstration to strike the prisoner, nor otherwise to do her any bodily harm; but just sang, danced, and opened his coat, and was unarmed. It is probable that the killing was the result of the offense taken by this woman when one of her customers, out of money, purposed to cause another to leave who had money, of which she expected to get the benefit. The killing was not in self-defense, and was upon very slight provocation, and was most deliberate. She was arrested in her purpose, and the deceased separated from her, and she was warned to stop, but she adhered to her already-expressed purpose to kill, and did, with a large pistol, kill an unarmed man, from whom she had nothing to fear, except that he might take away the man who was staking her in the game of cards going on. She

has not been severely dealt with, there is no error in the judgment of conviction passed upon her, and the same must be affirmed.

JUDGMENT AFFIRMED.