## Richmond.

## GREEN V. COMMONWEALTH.

### January 24, 1918.

1. CRIMINAL LAW—*Minors—Holding for Grand Jury.*—Section 2, chapter 350, Acts 1914, page 696, provides that: "No court or justice, unless the offense is aggravated, or the ends of justice demand otherwise, shall sentence or commit a child under eighteen years of age charged with or proven to have been guilty of any crime to a jail, work-house or police station, or send such a child on to the grand jury, nor sentence such child to the penitentiary," etc. As chapter 350 of Acts 1914 invests justices of the peace as well as courts of record with jurisdiction of cases arising under that act, the judgment of a justice of the peace in sending the accused, a minor sixteen or seventeen years of age, on to the grand jury was equivalent to the judicial ascertainment of the fact that the grave offense wherewith he was charged was aggravated, or that the ends of justice demanded its investigation by the grand jury. Therefore, while that judgment remained in force, the circuit court was under obligation to respect it, and it afforded sufficient ground for putting the accused upon trial.

2. HOMICIDE—*Indictment and Information—Description of Bullets.*— An indictment for murder alleged that the killing was done with a loaded shot-gun and that the shot-gun was loaded with gunpowder and leaden "shots or bullets." It was contended that the missiles used in loading the shot-gun with which the homicide was committed should have been described conjunctively.

    *Held:* That there was no force in this contention, as the statute provides, that "all allegations unnecessary to be proved may be omitted in any indictment or other accusation" (Code 1904, section 3998) ; and omissions from indictments "of any particular kind of force and arms; * * * or the omission or insertion of any other words of mere form or surplusage," will not vitiate an indictment. (Code 1904, section 3999.) In this indictment, the words "shots" and "bullets" were not used disjunctively or alternatively, but synonymously or interchangeably; and, hence, they introduce no element of uncertainty in the allegation even if the words were regarded as

material. An averment that the killing was done with a loaded shot-gun would have been quite sufficient, without specifying the kind of missiles employed.

8. JURY AND JURY TRIAL—*Venire Facias—Variance.*—A writ of *venire facias* directed the officer to summon sixteen persons for the trial of "James and Wesley Green," and the return so described the defendants, while the indictment designated them as "James Green and Wesley Green." After the defendants had elected to be tried separately, a second, or supplemental, writ of *veni:e facias* directed the sheriff to summon two other persons for the trial of "James Green," and for these alleged variances there was a motion to quash both writs.

*Held:* That these writs in all essential particulars complied with the statute, and the supposed discrepancy in the description of the defendants in the indictment and writs is immaterial, and could in no way have prejudiced their rights.

4. WITNESSES—*Impeachment—Argument of Counsel.*—Rebecca Harris, the mother of accused, was introduced as a witness by the Commonwealth to prove the homicide; but her testimony on cross-examination strongly tended to sustain the theory of the accused that he shot the deceased in defense of his mother. The Commonwealth was not altogether dependent upon the testimony of this witness to prove that the homicide was committed by the accused. Nevertheless, the attorney for the Commonwealth, in arguing his right to introduce evidence to contradict certain statements made by Rebecca Harris, asserted that "the Commonwealth would not be bound by the evidence of Rebecca Harris * * * if she told a pack of lies;" and also referred to her as "a person I consider a criminal, and probably ought to have been indicted." These remarks were excepted to by the prisoner but the exception was not sustained by the court, nor was the jury admonished that they were improper, and should not influence them in arriving at their verdict.

*Held:* That the statements made by the prosecuting officer in the circumstances mentioned constituted reversible error.

5. WITNESSES—*Impeachment of Witness—Statements of Counsel.*— It is difficult, at best, to disabuse the mind of the jury of derogatory statements of counsel made in respect to the character of a witness, even where the court instructs them on the subject, but the ill consequences are immeasurably increased when the objectionable language goes unrebuked. Section 3351 of the Code of 1904 declares that a party introducing a witness shall not be allowed to impeach his credit by general evidence of bad character; but, if in the opinion of the court, the witness proves adverse, he may contradict him by other evidence showing that at other times he had made statements

inconsistent with his present testimony. Yet this contradicting evidence must be introduced by leave of court and after the witness has been fully put on guard with respect to it. If, therefore, a witness so introduced cannot be impeached by general evidence of his bad character, *a fortiori* he should not be discredited before the jury by opinions of the prosecuting attorney with respect to his character.

6. CRIMINAL LAW—*Instructions—Not Based on the Evidence.*—Instructions which propound correct general propositions of criminal law, but are not applicable under the evidence adduced in the case, are calculated to confuse and mislead the jury, and ought not to be given.

7. HOMICIDE—*Instructions—Not Based on the Evidence.*—In a trial for murder where the defense of accused was justifiable homicide in defense of his mother, and the evidence, both for the Commonwealth and the accused, showed the existence of great provocation, namely, that when the fatal shot was fired the deceased was violently choking the mother of the accused, instructions that to sustain provocation as a defense to murder in the first degree, it must be shown that the prisoner, at the time of the fatal shooting, was deprived of the power of self-control by the provocation which he received, and that a mortal wound given with a deadly weapon in the previous possession of the slayer, without any, or upon very slight provocation, is *prima facie* willful, deliberate, and premeditated killing, were calculated to confuse and mislead the jury, and ought not to have been given.

8. HOMICIDE—*Instructions—Threats—True or False.*—In a trial for murder where the defense of accused was justifiable homicide in defense of his mother, it was error to refuse the following instruction: "The court instructs the jury that if they believe that threats were communicated, which he believed, it is immaterial whether the threats were true or false, so far as their influence upon the action of the prisoner is concerned."

9. HOMICIDE—*Justifiable Homicide.*—In a trial for murder where the defense of accused was justifiable homicide in defense of his mother, it was error to refuse the following instruction, which was applicable under defendant's theory of the case: "The court instructs the jury that justifiable homicide is the killing of a human being in the necessary, or apparently necessary, defense of one's self or family from great bodily harm, apparently attempted to be committed by force, or in defense of home, property or person, against one who apparently endeavors by violence or surprise to commit a felony on either."

Error to a judgment of the Circuit Court of Charles City county.

*Reversed.*

The opinion states the case.

*Henley, Hall & Hall,* for the plaintiff in error.

*Attorney-General Jno. Garland Pollard, Assistant Attorney-General J. D. Hank, Jr.,* and *Leon M. Bazile,* for the Commonwealth.

WHITTLE, P., delivered the opinion of the court.

Plaintiff in error, James Green (a minor sixteen or seventeen years of age) was jointly indicted with his brother, Wesley Green, for the murder of John Harris. The prisoners elected to be tried separately. Whereupon, plaintiff in error interposed a demurrer to the indictment, which was overruled; and upon the plea of not guilty the jury convicted him of murder in the second degree and fixed the term of his imprisonment in the penitentiary at eight years. To the judgment sustaining that verdict this writ of error was granted.

1. The first, fourth and ninth assignments of error assert that the court erred in permitting the prisoner to be indicted, tried and sentenced for the felony with which he was charged, because it contravenes the provisions of chapter 350, Acts 1914, page 696. (Va. Code, Vol. 4, page 1001).

Section 2 of the act prescribes: "No court or justice, unless the offense is aggravated, or the ends of justice demand otherwise, shall sentence or commit a child under eighteen years of age charged with or proven to have been guilty of any crime to a jail, work-house or police station, or send such a child on to the grand jury, nor sentence such

109

child to the penitentiary; but such child may be committed after hearing is had, as is hereinafter provided, to the State Board of Charities and Corrections or any society or association formed for the purposes specified in section 1 of this act; or the court or the judge above mentioned, may commit such a child to a reformatory under the laws now or hereinafter provided for such commitment. Nothing herein shall prevent the imposition of such punishment as is prescribed by the laws of the State of Virginia for the offense with which such child is charged, when no society or association or reformatory will accept such child."

The parties were arrested upon a warrant charging that they feloniously and of their malice did kill and murder John Harris; and they were carried before a justice of Charles City county, who endorsed on the warrant the following judgment: "The accused James Green and Wesley Green brought before us, and cases examined and sent on to the grand jury."

Chapter 350 invests justices of the peace as well as courts of record with jurisdiction of cases arising under that act; and the judgment of the justice in this instance in sending the accused on to the grand jury was equivalent to the judicial ascertainment of the fact that the grave offense wherewith he was charged was aggravated, or that the ends of justice demanded its investigation by the grand jury. Therefore, while that judgment remained in force, the circuit court was under obligation to respect it, and it afforded sufficient ground for putting the accused upon trial.

2. The second assignment of error involves the overruling of the demurrer to the indictment. The ground of demurrer is, that the missiles used in loading the shot-gun with which the homicide was committed should have been described conjunctively.

An averment that the killing was done with a loaded shot-gun would have been quite sufficient, without speci-

fying the kind of missiles employed. The statute provides, that "all allegations unnecessary to be proved may be omitted in any indictment or other accusation" (Code, section 3998); and omissions from indictments "of any particular kind of force and arms; * * * or the omission or insertion of any other words of mere form or surplusage," will not vitiate an indictment. (Section 3999.) The allegation is that the shot-gun was loaded with gunpowder and leaden "shots or bullets." "Shot" is defined as "a projectile, particularly a solid ball or bullet that is not intended to fit the bore of a piece; also such projectiles collectively." In this indictment, the words "shots" and "bullets" are not used disjunctively or alternatively, but synonymously or interchangeably; and, hence, they introduce no element of uncertainty in the allegation even if the words were regarded as material. The principle is thus illustrated by Mr. Bishop: "It is not ill to allege that the defendant stole a mare 'of a bay or brown color,' since 'bay' and 'brown' are in this connection the same in meaning." 1 Bishop's New Cr. Proc., sec. 590. This statement of the law is well sustained by authority.

3. The third assignment of error is to the court's refusal to quash the two writs of *venire facias* and the lists accompanying the same, and the sheriff's return. The first writ directed the officer to summon sixteen persons for the trial of "James and Wesley Green," and the return so described the defendants, while the indictment designates them as "James Green and Wesley Green." After the defendants had elected to be tried separately, the second, or supplemental, writ of *venire facias* directed the sheriff to summon two other persons for the trial of "James Green;" and for these alleged variances there was a motion to quash both writs.

In *Bennett* v. *Commonwealth*, 106 Va. 834, 55 S. E. 698, it was said that section 4018 does not require the name of

every one to be tried to appear in the writ. These writs in all essential particulars complied with the statute, and the supposed discrepancy in the description of the defendants in the indictment and writs are immaterial, and could in no way have prejudiced their rights.

4. The fourth assignment of error is to certain remarks of the prosecuting attorney in respect to Rebecca Harris, the wife of the deceased and mother of James Green, made in the presence of the jury.

Rebecca Harris was introduced as a witness by the Commonwealth to prove the homicide; but her testimony on cross-examination strongly tended to sustain the theory of the accused that he shot the deceased in defense of his mother. It may be noted that the Commonwealth was not altogether dependent upon the testimony of this witness to prove that the homicide was committed by the accused, inasmuch as the killing was admitted by the prisoner to E. H. Major, sheriff, who established that fact. Nevertheless, the attorney for the Commonwealth, in arguing his right to introduce evidence to contradict certain statements made by Rebecca Harris, asserted that "the Commonwealth would not be bound by the evidence of Rebecca Harris * * * if she told a pack of lies;" and also referred to her as "a person I consider a criminal, and probably ought to have been indicted." These remarks were excepted to by the prisoner but the exception was not sustained by the court, nor was the jury admonished that they were improper, and should not influence them in arriving at their verdict.

We think this ruling of the court might well have been construed by the jury as a tacit acquiescence in the animadversions of the prosecuting attorney. It is difficult, at best, to disabuse the mind of the jury of derogatory statements of counsel made in respect to the character of a witness, even where the court instructs them on the subject, but the ill consequences are immeasurably increased when the objec-

tionable language goes unrebuked.   Section 3351 of the Code declares that a party introducing a witness shall not be allowed to impeach his credit by general evidence of bad character; but, if in the opinion of the court, the witness proves adverse, he may contradict him by other evidence showing that at other times he had made statements inconsistent with his present testimony.   Yet this contradicting evidence must be introduced by leave of court and after the witness has been fully put on guard with respect to it.   If, therefore, a witness so introduced cannot be impeached by general evidence of his bad character, *a fortiori* he should not be discredited before the jury by opinions of the prosecuting attorney with respect to his character.   *Gordon* v. *Funkhouser,* 100 Va. 675; 42 S. E. 677; *McCue's Case,* 103 Va. 870, 49 S. E. 623.

In *Jessie's Case,* the statement made by the prosecuting attorney that a witness, who had been the housekeeper for the accused, and who had testified before the coroner's jury, had been induced by him to leave the State, there being no evidence to support the statement, was held to be highly prejudicial to the accused, and the refusal of the trial court to instruct the jury to disregard it was reversible error. *Jessie* v. *Commonwealth,* 112 Va. 887, 71 S. E. 612.

So, in *Mullins' Case,* it was held that, "Arguments made and opinions expressed by the Commonwealth's attorney when there was no evidence in the case upon which to base either, cannot be said to be without prejudice to the accused."   *Mullins* v. *Commonwealth,* 113 Va. 787, 75 S. E. 193.

We think the present case comes within the principle enunciated in the cases cited, and that the statements made by the prosecuting officer, in the circumstances mentioned, constitute reversible error.

5. The remaining assignment of error which need be noticed relates to the giving and refusal of instructions.

Exception was taken by the accused to the giving of instructions "F" and "G" on behalf of the Commonwealth. These instructions propound correct general propositions of criminal law, but they were not applicable under the evidence adduced in this case; and, therefore, were calculated to confuse and mislead the jury, and ought not to have been given.

These instructions are as follows:

"F. The court instructs the jury that to sustain provocation as a defense to murder in the first degree, it must be shown that the prisoner, at the time of the fatal shooting, was deprived of the power of self-control by the provocation which he has received; and in deciding the question whether this was or was not the case, regard must be had to the character of the provocation, and the act by which death was caused to the time which elapsed between the provocation, and the act which caused death to the prisoner's conduct during the interval, and to all circumstances tending to show the state of his mind at the time he committed the act."

"G. The jury are instructed that a mortal wound given with a deadly weapon in the previous possession of the slayer, without any, or upon very slight provocation, is *prima facie* willful, deliberate, and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

Instruction "F" applies to a case where the defense rests upon the ground that the accused was deprived of the power of self-control by the provocation given; and instruction "G" would be proper where the ground of defense is as stated above, and the evidence shows either that there was no provocation or very slight provocation for the act done. The evidence, both for the Commonwealth and the accused, showed the existence of great provocation, namely, that when the fatal shot was fired the deceased was violently choking the mother of the accused.

Exception was likewise taken to the refusal of the prayer for instruction 4, which is as follows:

"The court instructs the jury that if they believe that threats were communicated, which he believed, it is immaterial whether the threats were true or false, so far as their influence upon the action of the prisoner is concerned."

This instruction was pertinent and embodies a correct statement of the law, and ought to have been given.

The refusal to give the following instruction was also made a ground of exception: "The court instructs the jury that justifiable homicide is the killing of a human being in the necessary, or apparently necessary, defense of one's self or family from great bodily harm, apparently attempted to be committed by force, or in defense of home, property, or person, against one who apparently endeavors by violence or surprise to commit a felony on either."

This instruction was approved in *Hodges* v. *Commonwealth,* 89 Va. 265, 272, 15 S. E. 513, and is applicable under the defendant's theory of the case and should have been given.

The assignment of error for the refusal of the court to set aside the verdict as contrary to the law and the evidence need not be discussed, since the judgment must be reversed, the verdict set aside and a new trial granted upon the grounds hereinbefore indicated.

*Reversed.*