COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Willis
Argued by teleconference


JOSEPH WAYNE GARRARD
                                                 MEMORANDUM OPINION* BY
v.       Record No. 1677-09-2                    JUDGE ROSSIE D. ALSTON, JR.
                                                      SEPTEMBER 21, 2010
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              Timothy J. Hauler, Judge

           Gregory R. Sheldon (Bain Sheldon, PLC, on brief), for
           appellant.

           Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
           Cuccinelli, II, Attorney General, on brief), for appellee.


        Joseph Wayne Garrard (appellant) appeals from a conviction for voluntary manslaughter,

in violation of Code § 18.2-35.  On appeal, appellant contends the trial court erred in rejecting a

self-defense jury instruction.  For the reasons that follow, we disagree with appellant and affirm

the trial court's decision.

                                     I.  BACKGROUND[1]

        In reviewing the trial court's decision to refuse the jury instruction, "we must view the

evidence with respect to the refused instruction in the light most favorable to the defendant."

Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996), aff'd, 255 Va. 1,

492 S.E.2d 447 (1997).  So viewed, the evidence at trial showed that in the early hours of

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As the parties are fully conversant with the record in this case, and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of this appeal.

January 14, 2008, Derek Best (Derek), and his ex-girlfriend, Misty Garrard (Misty), had an argument outside of Derek's home in Chesterfield County. After the argument, Misty went to the house she shared with her parents, and Derek, a male friend, Derek's brother, and Derek's brother's girlfriend, Gina Stewart (Gina), followed Misty to her home. Gina testified that Derek wanted to tell Misty's parents that Misty "had taken his stuff" and he wanted "to let them know what she had been doing for the past month." According to Gina, they knocked on the Garrards' front door and Misty's mother, Billie Dee Garrard (Dee), let Derek and Gina inside. Derek then told Dee and appellant, Dee's husband and Misty's father, why he was upset with Misty. According to Gina, Derek told the Garrards that Misty was "fucking a nigger."[2] Gina recalled that Derek was calm when he made this statement. Gina testified that appellant, who looked angry, went upstairs for about thirty seconds, came back down, and pushed Derek back several feet. Then, appellant and Derek began to fight. At this time, Gina attempted to get out of the home. As she tried to open the front door, Gina heard a gunshot; she turned around and observed Derek's hands on top of appellant's shoulders.

According to Misty's mother, Dee, she was awakened at 4:00 a.m. by the sounds of banging on the front door and people screaming and yelling. Dee testified that while she answered the door, appellant went upstairs "to put on some pants." Recognizing Derek's voice, she partially opened the front door to let Derek into the house. Dee testified that Derek pushed his way through the door, cutting her foot with the door as it swung open, and then began loudly screaming and yelling obscenities about Misty. Like Gina, Dee testified that Derek said Misty was "fucking a nigger." Dee further testified that Derek called Misty "a whore," as he stood "right in [Dee's] face." Dee claimed that Derek smelled strongly of alcohol, had slurred speech,

---

[2] It is regretful that foul language and unseemly and pejorative references are contained in the body of this opinion. However, these unpleasant words are necessary to provide the proper context for the incident.

and was behaving aggressively and violently. Dee testified that shortly thereafter, appellant came downstairs with a loaded 38-caliber revolver. She could not recall whether appellant pushed Derek first, but she testified that Derek began "beating the hell out of" appellant as they stood by the front door. She testified that Derek was not armed, and although he injured her foot with the door, Derek did not touch her prior to his altercation with appellant.

Appellant testified in his own defense. He stated that he woke up to the sound of someone beating on the door. He claimed that he went upstairs to put on shorts and retrieve his gun because he was "scared." When appellant came back downstairs, he saw Derek "in [Dee's] face" and Dee backing away from Derek. According to appellant, he had the gun in his right hand, and when he approached Dee and Derek, he "put his left hand on Derek's chest and moved him two or three feet back from [Dee]." Appellant told the police that he pushed Derek away because Derek was "invading [his wife's] space." After appellant pushed Derek, Derek "went nuts" and punched appellant in the side of the head. Appellant testified that the men engaged in a thirty-second "scuffle," and then the gun "went off" and shot Derek in the stomach. At trial, appellant claimed that he did not remember pulling the trigger; however, he recognized that he must have pulled the trigger since the gun discharged. Appellant stated that if he did pull the trigger, he did so accidentally. Derek died as a result of the gunshot wound to his abdomen.

Appellant said he had never had a problem with Derek before and testified that he did not see Derek "do[] anything physical" to his wife the night of the shooting. Appellant testified that he was upstairs when Derek entered the house and cut Dee's foot with the door. Appellant further acknowledged that Derek did not have a weapon when he came to the Garrards' home. Finally, appellant admitted that he, not Derek, started the physical altercation.

Appellant was charged with first- and second-degree murder, in violation of Code § 18.2-32. At trial, appellant proffered two defense jury instructions. One instruction asked the

jury to consider the appellant's position that the shooting was accidental. The trial court allowed

the jury to consider this instruction. The other instruction read:

> If you believe that the defendant was without fault in provoking or
> bringing on the fight, and if you further believe that the defendant
> reasonably feared, under the circumstances as they appeared to
> him, that he and/or a member of his family was in danger of being
> killed or that he and/or a member of his family was in danger of
> great bodily harm then the killing was in self-defense, and you
> shall find the defendant not guilty.

The trial court rejected this instruction, and in so doing, referred to it as a "self-defense"

instruction. The jury subsequently found appellant guilty of the lesser-included offense of

voluntary manslaughter. This appeal followed.

## II. ANALYSIS

Appellant contends that the trial court erred in refusing to allow the jury to consider his

instruction on the law of self-defense to the jury.[3] First, appellant argues that his "self-defense"

instruction was wrongfully excluded, arguing the trial court incorrectly found that it conflicted

with his defense theory of accidental shooting.

The Supreme Court has specifically held that where the facts support the inferences that a

killing was in self-defense or accidental, the "accused is entitled to have both issues submitted to

the jury." Jones v. Commonwealth, 196 Va. 10, 15, 82 S.E.2d 482, 485 (1954) (citing Braxton v.

Commonwealth, 195 Va. 275, 77 S.E.2d 840 (1953); Valentine v. Commonwealth, 187 Va. 946,

---

[3] As a threshold matter, the Commonwealth argues that appellant's argument is limited
on appeal to a discussion of a general justified self-defense instruction, and as such, this Court
may not consider any argument regarding the defense of others. The Commonwealth contends
that as appellant's question presented did not mention the defense of others, but rather only
referred to a rejected "self-defense instruction," we may not consider the issue of the defense of
others on appeal. We disagree. Appellant's question presented clearly challenges the trial
court's denial of the instruction discussing *both* self-defense and the defense of appellant's wife.
The use of the term "self-defense instruction" constituted a way to identify *which* instruction was
wrongfully excluded, but did not serve to limit the scope of appellant's appeal. See Moore v.
Commonwealth, 276 Va. 747, 754, 668 S.E.2d 150, 154 (2008) (reaching the merits of the issue
since the question presented left no doubt as to what was the subject of the appellate claim).

48 S.E.2d 264 (1948)).  Accordingly, appellant was entitled to present alternative theories of defense to the jury, *as long as those theories were supported by the evidence*.  See Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001).  However, the trial court did not exclude appellant's instruction because he argued alternative theories of defense; rather, the trial court refused appellant's instruction because it was not supported by the evidence.

"The trial judge has broad discretion in giving or denying instructions requested."  Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (en banc).  "A defendant is entitled to have the jury instructed only on those theories of the case that are supported by evidence."  Connell v. Commonwealth, 34 Va. App. 429, 436, 542 S.E.2d 49, 52 (2001).  "An instruction is proper only if supported by more than a scintilla of evidence."  Sands, 262 Va. at 729, 553 S.E.2d at 736.  "If the instruction is not applicable to the facts and circumstances of the case, it should not be given."  Id.

To determine whether the contested instruction at bar was supported by the evidence, a discussion of the different defense theories potentially implicated by the facts of the case directs our analysis.  One of the defenses theoretically subsumed in the circumstances of the instant case is general justified self-defense, an affirmative defense.  McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978).  For a self-defense claim, "[a] person who reasonably apprehends bodily harm by another is privileged to exercise reasonable force to repel the assault."  Diffendal v. Commonwealth, 8 Va. App. 417, 421, 382 S.E.2d 24, 25 (1989).

An assertion of self-defense by a defendant for a killing "'implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'"  Sands, 262 Va. at 729, 553 S.E.2d at 736 (quoting McGhee, 219 Va. at 562, 248 S.E.2d at 810).  "Justifiable homicide in self-defense

occurs where a person, *without any fault on his part in provoking or bringing on the difficulty*, kills another under reasonable apprehension of death or great bodily harm to himself." Bailey v. Commonwealth, 200 Va. 92, 96, 104 S.E.2d 28, 31 (1958) (emphasis added). On the other hand, an excusable homicide in self-defense occurs where the "accused, *although in some fault in the first instance in provoking or bringing on the difficulty*, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." Id. (emphasis added).

"Defense of others" is an affirmative defense separate and distinct both legally and factually from the self-defense theories. In considering the theory of defense of others, "[t]he Supreme Court has clearly recognized that one is privileged to use force in defense of family members." Foster v. Commonwealth, 13 Va. App. 380, 385, 412 S.E.2d 198, 201 (1991) (citing Newberry v. Commonwealth, 191 Va. 445, 459, 61 S.E.2d 318, 324 (1950); Green v. Commonwealth, 122 Va. 862, 871, 94 S.E. 940, 942 (1918); Hodges v. Commonwealth, 89 Va. 265, 272, 15 S.E. 513, 516 (1892)). However, one must reasonably apprehend death or serious bodily harm to another before he or she is privileged to use force in defense of that person. Id. at 385-86, 412 S.E.2d at 202. Furthermore, "one may avail himself or herself of the defense only where he or she reasonably believes, based on the attendant circumstances, that the person defended is without fault in provoking the fray." Id. at 386, 412 S.E.2d at 202.

Preliminarily, we note that appellant proffered an unconventionally drafted "blended instruction," which included language from multiple defense theories. It read:

> If you believe that the defendant was without fault in provoking or bringing on the fight, and if you further believe that the defendant reasonably feared, under the circumstances as they appeared to him, that he and/or a member of his family was in danger of being killed or that he and/or a member of his family was in danger of great bodily harm then the killing was in self-defense, and you shall find the defendant not guilty.

This instruction appears to include language for both general justified self-defense and the defense of others. Given the evidence presented, the trial court was justified in its conclusion that appellant was not entitled to either of these instructions.

Initially, it appears appellant offered the law for justified self-defense, as the instruction discussed the law for a "defendant [who] was without fault in provoking or bringing on the fight."[4] Given the evidence presented, appellant was not entitled to a justified self-defense instruction because he failed to present a scintilla of evidence to support this theory of defense.

For a justified self-defense, "there must be some overt act indicative of imminent danger at the time." Vlastaris v. Commonwealth, 164 Va. 647, 652, 178 S.E. 775, 776 (1935). See also Yarborough v. Commonwealth, 217 Va. 971, 975, 234 S.E.2d 286, 290 (1977); Mercer v. Commonwealth, 150 Va. 588, 597, 142 S.E. 369, 371 (1928). "There must be . . . some act menacing present peril . . . [and] the act . . . must be of such a character as to afford a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution." Byrd v. Commonwealth, 89 Va. 536, 539, 16 S.E. 727, 729 (1893). "[T]he 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life." Sands, 262 Va. at 729, 553 S.E.2d at 736 (citing Stoneman v. Commonwealth, 66 Va. (25 Gratt.) 887, 900 (1874)). Moreover, "[i]f a defendant is even slightly at fault, the killing is not justifiable homicide." Perricllia v.

_____

[4] Virginia Model Jury Instructions, No. 33.800, provides the law of justified self-defense:

> If you believe that the defendant was without fault in provoking or bringing on the fight, and you further believe that: (1) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of being killed or that he was in imminent danger of great bodily harm; and (2) that he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm, then the killing was in self-defense, and you shall find the defendant not guilty.

<u>Commonwealth</u>, 229 Va. 85, 94, 326 S.E.2d 679, 685 (1985) (citing <u>Dodson v. Commonwealth</u>, 159 Va. 976, 981, 167 S.E. 260, 261 (1933)).

Although appellant and his wife testified that Derek was yelling crude and racist sentiments, there was no evidence that Derek used or threatened physical force against appellant. Derek did not have a weapon, and appellant conceded that he initiated the physical conflict by pushing Derek.[5] Under these facts, this Court finds that appellant was not entitled to a justified self-defense instruction.

Appellant's proposed jury instruction also attempted to provide the law for the defense of others. It included language regarding the defense of "a member of [defendant's] family [who] was in danger of being killed or . . . was in danger of great bodily harm."

A defense of others claim requires, *inter alia*, that "the defendant . . . reasonably believe that the person being defended was free from fault." <u>Foster</u>, 13 Va. App. at 386, 412 S.E.2d at 202. In fact, "the law pertaining to defense of others is that one may avail himself or herself of the defense *only where* he or she reasonably believes, based on the attendant circumstances, that *the person defended is without fault* in provoking the fray." <u>Id.</u> (emphasis added). Appellant's instruction was deficient in its construction and as a matter of law in that it omitted a statement that appellant's wife, the person being defended, had to be "without fault in provoking the fray." <u>Id.</u> Since appellant's instruction, as a defense of others instruction, "did not address the issue that the defendant must reasonably believe that the person he or she is defending was without

---

[5] While analyzing appellant's right to "self-defense," it is not appropriate to consider any threat appellant potentially posed to Dee. This is because "[s]elf-defense . . . is a defense to an act of violence that repels violence *directed at the defendant*." <u>Graham v. Commonwealth</u>, 31 Va. App. 662, 672, 525 S.E.2d 567, 572 (2000) (emphasis added). Appellant's cognizance of an alleged threat to Dee will be considered below, in the context of the determination of whether a *defense of others* instruction was warranted.

fault in instigating the altercation," it was an incorrect statement of the law.[6]  Id. at 386-87, 412

S.E.2d at 202.

Moreover, the evidence did not warrant instructing the jury on a defense of others theory.

> [A] person asserting a claim of defense of others may do so only
> where the person to whose aid he [] went would have been legally
> entitled to defend . . . herself. . . . One must reasonably apprehend
> death or serious bodily harm to another before he . . . is privileged
> to use force in defense of the other person.

Id. at 385-86, 412 S.E.2d at 201-02 (internal citation omitted).  Because "the right to defend

another 'is commensurate with self-defense,'" id. at 385, 412 S.E.2d at 201, "the overt act

indicative of immediate danger" required for a self-defense defense is also necessary for a

defendant to claim the defense of others defense, Vlastaris, 164 Va. at 652, 178 S.E. at 776.  In

determining whether an overt act occurred, "[w]ords and a 'threatening attitude' are not, by

themselves, enough."  Carter v. Commonwealth, 42 Va. App. 681, 694, 594 S.E.2d 284, 291

(2004).

Although Derek was yelling and screaming cruel obscenities "in [Dee's] face," this

behavior did not constitute an "overt act indicative of imminent danger."  Vlastaris, 164 Va. at

652, 178 S.E. at 776.  Derek's statements, while offensive and pejorative, were about appellant's

daughter and could not reasonably be understood as indicating an intention to hurt Dee or place

her in imminent danger.  Although Dee testified that Derek cut her foot as he entered the house,

---

[6] In Foster, 13 Va. App. at 383, 412 S.E.2d at 200, this Court rejected the following
instruction, which was very similar to appellant's proffered instruction in the instant case:

> If you believe that the defendant was injecting himself into a fight
> to assist [person A], who was in a fight with [person B], because
> he reasonably believed that [person A] was in danger of great
> bodily harm, then the wounding was in defense of another.

The Court rejected this instruction because it too did not properly explain that the person
defended must be "without fault" in an altercation with an attacker.  Id. at 386, 412 S.E.2d at
202.

there was no evidence that prior to the physical struggle between Derek and appellant, appellant was aware that Derek had injured Dee. Therefore, as a matter of law, there was not a scintilla of evidence to warrant instructing the jury on a defense of others theory.

It is recognized that this Court's inquiry does not end with the determination that the instruction misstated the law. In Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681 (1991) (quoting Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)), the Supreme Court held that "'when [a] principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form.'" There was no reversible error in the instant case because even if the trial court corrected any misstatement of law in the instant case, (e.g. by inserting the necessary "without fault" language in the defense of others instruction), appellant was not entitled to either a justified self-defense instruction or a defense of others instruction given the pertinent facts of the case.

"[A] circuit court ordinarily does not have an affirmative duty to give a jury instruction on a particular legal principle when a criminal defendant fails to request that the jury be instructed on that principle." Commonwealth v. Jerman, 263 Va. 88, 93, 556 S.E.2d 754, 757 (2002). Even though a defendant may be entitled to a particular instruction, the trial judge is not required to give it *sua sponte* as the defendant may not have sought it for sound tactical reasons. See Manetta v. Commonwealth, 231 Va. 123, 127-28 n.2, 340 S.E.2d 828, 830 n.2 (1986). Appellant may well have had tactical reasons for omitting or choosing among alternative theories of defense. Thus, even though trial courts may have a duty to correct jury instructions that misstate a legal principle, a trial court is not obligated to speculate on appellant's trial strategy or to rewrite appellant's blended jury instructions because doing so may either undermine appellant's defense or impose a particular defense strategy on appellant. See id.

In sum, the trial court properly refused the instruction proffered in the instant case because there was not a scintilla of evidence to support an instruction on justified self-defense or defense of others. Additionally, the trial court did not have a duty to correct the flawed instruction because in doing so, the trial court would have inappropriately shouldered the responsibility of making a tactical decision regarding appellant's defense.

## III. CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in rejecting appellant's "self-defense" instruction. Accordingly, we affirm appellant's conviction.

Affirmed.

Petty, J., concurring.

I concur with that portion of the opinion that concludes that there was no evidence to support instructing the jury on the legal theory of defense of others. Accordingly, I believe that the proposed instruction that blended the distinct, albeit related, legal theories of self-defense and defense of others was, under the facts of this case, both incorrect and unsupported by the evidence.[7] Therefore, I conclude that the trial court did not err in refusing the proffered instruction, and I would affirm the conviction.

---

[7] Garrard's primary defense at trial was that the shooting was accidental. As a secondary argument, Garrard apparently made the tactical decision to combine the self-defense and defense of others argument into one instruction. After the trial court refused to grant the proffered instruction, Garrard did not request a separate instruction on self-defense. Thus, I agree with the majority that the trial court was not obligated to presume Garrard wished to pursue the self-defense theory independently and redraft the proposed instruction *sua sponte*.