100   675
102   40,

# Richmond.

## GORDON v. FUNKHOUSER.

### November 20, 1902.

1. EVIDENCE—*Adverse Witness—Contradiction—Foundation*—A party may
   contradict his own witness who appears to be adverse by other
   testimony, provided foundation is laid for such contradictory evi-
   dence by first calling to the attention of the witness the circum-
   stances of the supposed contradictory statement sufficiently to
   designate the particular occasion. This should usually embrace the
   time, place, and person to whom the statement was made, but the
   omission of place will not be material where it is evident the wit-
   ness fully understood the occasion referred to. The Virginia statute
   is simply declaratory of a well-established rule of practice. Acts
   1899-1900, p. 124.

2. EVIDENCE—*Parties—Interest.*—Where the original parties to a trans-
   action are all living interest does not disqualify a party to testify in
   his own behalf.

3. EVIDENCE—*Denial of Partnership—Burden of Proof—Holding Out as
   Partner.*—Where a defendant, sued with others as partners, denies
   the partnership by a plea accompanied by affidavit of its truth, the
   burden is on the plaintiff to prove the partnership, but the acts and
   declarations of the defendant tending to show that he held himself
   out as a partner are admissible in connection with other evidence
   to show that he was a member of the firm.

4. PARTNERS—*Sealed    Instruments—Authority—Ratification—Actions    at
   Law—Motions for Judgment.*—Upon a sealed instrument executed by
   one partner in the name of the firm, if liability upon the instrument
   be put in issue by the other partners, by proper pleadings, there can
   be no recovery at law except against the partner signing, unless he
   had express authority under seal for that purpose from his co-part-
   ners, or they were present at the act, and thereto authorized him, or
   thereafter ratified the act by writing under seal.

5. MOTION FOR JUDGMENT—*Action at Law.*—A motion for a judgment for

money under the statute, where the notice takes the place of the writ and the declaration, is, nevertheless, an action at law.

Error to a judgment of the Circuit Court of Rockingham county, rendered April 23, 1901, in a proceeding by motion, after notice, for a judgment for money wherein the defendant in error was the plaintiff, and the plaintiff in error and another were the defendants.

*Reversed.*

A witness, A. J. Johnson, a brother-in-law of Dr. W. A. Gordon, and who had been a clerk for the firm of W. K. Sites & Gordon, was put on the stand to show that W. A. Gordon was a member of the firm, or had permitted himself to be held out as such, but the witness testified to the contrary. It was then sought to show that he had stated to Squire Gentry that W. A. Gordon was a member of the firm, and for this purpose, and to show that W. A. Gordon was a member of the firm, the trial court permitted the plaintiff, who had introduced him, to ask leading questions. The other facts sufficiently appear in the opinion of the court.

*O. B. Roller & Martz* and *Winfield Liggett,* for the plaintiff in error.

*Sipe & Harris,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Elizabeth T. Funkhouser, by notice under the statute, brought her action in the Circuit Court of Rockingham county against W. K. Sites and W. A. Gordon for five hundred dollars, with interest thereon from December 2, 1897; that being the amount she claimed to be entitled to recover on a bond executed to her on December 2, 1895, due one day after date, credited by interest paid to December 2, 1897, on which bond

W. P. Sites (since deceased) was surety. The bond, which on the trial was introduced in evidence and conformed to the copy attached to plaintiff's notice of motion, is signed "W. K. Sites & Gordon (Seal)," "W. P. Sites (Seal)."

To this action W. A. Gordon (spoken of in this record as Dr. W. A. Gordon) filed his plea of *non est factum*, and also his plea under oath denying that he was a member of any such firm or partnership as W. K. Sites & Gordon, or that he ever signed or authorized anyone else to sign the bond sued on, or ever ratified the execution of said bond.

Upon the trial the jury found for the plaintiff on both issues, whereupon the defendant, Dr. Gordon, moved the court to set aside the verdict on the ground that it was contrary to the law and the evidence, which motion was overruled, and judgment rendered on the verdict. This judgment, upon a writ of error awarded Dr. Gordon, is before us for review.

In the progress of the trial, the plaintiff propounded to A. J. Johnson, a witness introduced in her behalf, the following question: "Did you tell Squire H. B. C. Gentry, on or about the 8th day of February, 1900, last year, that Dr. W. A. Gordon was the original member of the firm with W. K. Sites?" To the propounding of which question the defendant, Dr. Gordon, objected, the objection was overruled, and this is assigned as error.

While it had not been shown that the witness had an adverse interest to the plaintiff, it did appear that he was adverse, and the plaintiff had the right under the statute (Acts 1899-1900, pp. 124-5) to contradict him by other evidence, provided he first mentioned to the witness the circumstances of the supposed contradictory statement sufficiently to designate the particular occasion, and asked him whether or not he had made such statement. This statute, providing how a party having adverse interest, or an adverse witness, may be examined, simply applies the old and well-established rule of practice governing the in-

troduction of proof of contrary statements. Under that rule, it is generally necessary, in the case of verbal statements, first to ask the witness, as to the time, place, and person involved in the supposed contradiction. 1 Greenleaf on. Ev., sec. 462.

The question propounded to the witness Johnson in this case, called his attention to the time and person involved in the supposed contradiction, and only omits the place, and while it would have been better practice to have mentioned the place also, still, as the witness answered emphatically that he never made such a statement to Squire Gentry, it is impossible that the omission to do so could have been prejudicial to the defendant, Dr. Gordon. Therefore, this assignment of error is without merit.

In the course of the examination of Dr. Gordon, as a witness in his own behalf, he was asked: "Is that the letter-head of the old firm of Sites & Gordon?" (handing witness the letter-head), and the witness answered, "Yes, sir." To which question the plaintiff objected because the paper itself did not indicate the time the paper was used, and also on the ground that the answer to the question was a declaration of the witness, himself the interested party, which objections were sustained, and this is assigned as error.

There was evidence tending to show that there was a partnership conducted under the style and firm name of Sites & Gordon, composed of W. K. Sites and A. Hays Gordon, at the time the bond sued on was executed by W. K. Sites, and that the firm of which Dr. Gordon is alleged to have been a member was not formed until three years thereafter. The letter-head in question is in the form of letter-heads generally used in the mercantile business, stating the names of the individual members of the partnership, the place at which the business of the firm is conducted, and leaving the date at which the letter-head is used blank. Upon this letter-head appeared the names of W. K. Sites and A. Hays Gordon as the members of the firm, and it was clearly the right of the witness to state in answer to

the question that it was the letter-head used by that firm. That he was a party interested in the result of the suit did not disqualify him to state the fact sought to be elicited by the question. The obligee in the bond sued on is the plaintiff in the action, competent to testify on her own behalf; therefore, the defendant, Dr. Gordon, was also a competent witness, and an objection to his competency, had it been made, could not have been sustained. Secs. 3345-6 of the Code.

The remaining assignments of error to be considered relate to the refusal of certain instructions asked by the defendant, and the giving of another in lieu thereof, and may be considered together. The instructions asked and refused are as follows:

"1. That before the plaintiff can recover in this action against Dr. W. A. Gordon, they must believe from the evidence that Dr. W. A. Gordon was a partner of the firm of Sites & Gordon on the 2d day of December, 1895, when the bond sued on was executed, and the burden of proving that fact is upon the plaintiff."

"2. The jury is further instructed that, before the plaintiff can recover in this action against Dr. W. A. Gordon, they must believe from the evidence that Dr. W. A. Gordon was not only a partner of the firm of Sites & Gordon on the 2d day of December, 1895, when the bond sued on was executed, but also that the same was executed by Sites under authority under seal from Dr. W. A. Gordon, and the burden of proving that fact is upon the plaintiff."

In lieu of these instructions the court gave the first, with the modification: "But if the jury believe from the evidence that W. A. Gordon solicited W. P. Sites to become surety on the bond of $500 sued on in this case, and at the time held himself out as a member of the firm, it is a fact for them to consider in connection with the case tending to show he was a member of the firm, but the jury must take into consideration all the evidence in the case."

We see nothing improper in this modification of the first instruction, but the effect of refusing the second instruction asked for by the defendant, Dr. Gordon, and the giving of the first with its modification, was well calculated to mislead the jury in finding a verdict against him merely on the ground that the evidence tended to show that he was a member of the firm of Sites & Gordon at the time the bond sued on was executed.

It is not pretended that the defendant, Dr. Gordon, gave prior authority, under seal, to W. K. Sites to execute the bond, or that he thereafter ratified the act. Therefore, Dr. Gordon may have been a member of the firm of Sites & Gordon when the bond was executed, and yet no recovery could be had against him thereon unless all distinctions between sealed and unsealed instruments are abolished in Virginia, and a contract by one partner under seal is as valid and binding on the other partner as though the instrument was not under seal.

One partner is bound in all undertakings entered into by the other partner within the scope of the business engaged in, upon the principle that each partner is the agent of the partnership; and his right, powers, duties and obligations are in many respects governed by the same rules and principles as those of an agent. A partner, indeed, virtually embraces the character of both principal and agent. Story on Part. (6th ed.), p. 3.

"One partner may bind his fellows, whether they may be active, nominal, or dormant . . . . by any simple (that is, unsealed) contract touching the business of the firm, but in general *not by deed*, unless he have express authority *by deed* for that purpose, or unless the other partners be *present at the act* and thereto authorize him; and that, notwithstanding the contract of partnership be under seal, if it do not contain a specific power to bind the firm by promise under seal, nor does it avail to bind them that the others *afterwards* acknowledge his authority and *verbally* ratify the act. But whilst, by such a contract under seal, his associates may not be bound, the partner

who executes it always is." 3 Minor's Ins. (Pt. 2) 710, and authorities cited.

Continuing, that learned commentator says: "But although, in *a court of law*, the bond in the name of one partner or in the partnership name, executed by one partner, without due authority, for a simple contract debt of the firm, merges the simple contract debt, yet, unless the creditor agreed to accept such bond in *discharge of the partnership* (a supposition which the execution of the bond in the *firm name* would tend to repel), if the obligor therein became insolvent, a *court of equity*, disregarding the *legal* merger of the original simple contract, will charge the demand *upon the firm*, and through it upon the other partners.  Among the authorities cited in support of this text are *Sale* v. *Dishman*, 3 Leigh, 573; *Galt* v. *Galland*, 7 Leigh, 594; and *Weaver* v. *Tapscott*, 9 Leigh, 424.  In all of these cases, the partner who neither executed the bond or covenant, nor authorized its execution, nor thereafter ratified it as binding upon him, was held liable *in equity* for the debt sought to be recovered, upon the ground that it was a pre-existing demand against the firm, binding upon each of the partners.  In other words, the court in each of those cases held that, although at law there would be no remedy on the sealed obligation, except against the partner who executed it, a court of equity has jurisdiction to hold all the partners as much bound as if there were no seal, if there was a pre-existing liability resting on the firm for the debt for which the sealed obligation was given. So, in the more recent case of *Jordan* v. *Miller*, 75 Va. 442, cited by defendant in error, which was a suit in equity for the settlement of the transactions of the firm of Brown, Miller & Jordan, it was held that, though one or more of the partners gave their bond to a party with whom they had made a contract, which under their general authority as partners they were authorized to make, the debt was still a partnership debt, and binding on the partner who did not join in making the contract

or in giving the bond.    Likewise in *McCullough* v. *Summerville*, 8 Leigh, 415, also cited by defendant in error, it was held that, though one partner cannot in general bind his co-partner by deed, so as to make it operative as a deed, yet an assignment by one partner of the effects of the firm, which would be lawful if there were no seal, will not be allowed in equity to be defeated by the circumstance of a seal being annexed to the instrument.    That is not, however, the question we are dealing with, nor are we dealing with the kindred questions decided in *Gibson* v. *Wilson*, 14 Wall. 244, and *McDonald* v. *Eggleston*, 60 Amer. Dec. 306, relied on by defendant in error.

In Hare & Wallace's note to the case of *Livingston* v. *Roosevelt*, 1 Amer. L. Cas. 554-5, after illustrating the distinction between the implied authority of one partner as general agent of the partnership to bind the firm by a sealed instrument, applying only where the firm is sought to be charged, and when the object is to discharge a debt due to it, as where a seal is not essential to the nature of the contract, or where an act is done, which one partner may do without deed, such as a sale or assignment, where the property may be transferred by delivery, &c., &c., it is said: "The rule has also been applied to executory contracts; and though perhaps such an application of it may be allowable in certain cases where the action is brought upon something collateral or consequential to the deed, as in *Lawrence* v. *Taylor*, 5 Hill (N. Y.), 108, 113, it is not seen how it can possibly be applicable to a case where an action is brought upon the deed or contract itself, on a right having no legal existence but by the operation of the deed.    The doctrine above mentioned, could not, in an action on the deed on a plea of *non est factum*, extend to make the deed of one partner the deed of the other; nor could it so set aside the deed as to leave in force any antecedent parol contract, express or implied; and this seems to be admitted in *Anderson* v. *Thompkins*, 1 Brock. 456, and *Montgomery* v. *Boone*, 2 B. Monroe, 244."

In this case, although it is an action upon notice under the statute, where the notice takes the place of both the writ and declaration in an ordinary suit at law, it is nevertheless an action at law wherein recovery against plaintiff in error, Dr. Gordon, can be had, if at all, only by reason of his being bound by the bond sued on as a partner in the firm styled "W. K. Sites & Gordon," or "Sites & Gordon," unless, as we have said, all distinctions between sealed and unsealed instruments have been abolished in this jurisdiction, and a contract by one partner under seal is as valid and binding upon his co-partner as if it were but a simple contract touching the business of the firm.

While the principle that authority to execute a sealed instrument does not grow out of the mere relation of partnership is nowhere questioned, it is true, as often stated by law writers and in the decided cases, that a strong disposition has been evinced in a number of American cases to contest the doctrine that it requires a prior authority or a subsequent ratification *under seal*, to make the execution of a sealed instrument by one partner valid and binding upon the other partner, notwithstanding the doctrine is established and maintained in its most rigorous extent by the whole current of decisions in England; but, as said by Mr. Minor in concluding his discussion of the subject (3 Minor's Inst. *supra*, 711): "In Virginia . . . . and in several other States, the common law doctrine is adhered to in all its fullness and rigor, as appears from the cases cited in the last paragraph, to which may be added *Preston* v. *Hull*, 23 Gratt. 616-17; *Penn* v. *Hamlet*, 27 Gratt. 342."

The cases referred to as cited in the preceding paragraph include the Virginia cases to which we have already referred, and in each of them it was distinctly recognized as a settled rule of law, that there could be no remedy in a court of law upon a sealed instrument, except against the person executing it, unless he had express authority under seal for that purpose, or the other persons be present at the act and thereto authorized him, or they thereafter ratified the act by writing under seal.

In *Preston* v. *Hull, supra,* it was held to be settled law that a bond in which the name of the obligee was blank when it was signed by the obligors was not their deed, and that no authority by parol to fill the blank could make it valid.    In the elaborate opinion in that case by Staples, J., the question whether or not the distinctions between sealed and unsealed instruments have all been destroyed is discussed.    The opinion says:    "The common law rule that the authority of an agent must be commensurate with the act he performs cannot be departed from consistently with the preservation of any rule at all, for, if a departure from the rule in one particular should be permitted we shall be carried on step by step, if we mean to be consistent, until we have destroyed all the well-settled distinctions between sealed and unsealed instruments."

It was argued in that case, as in this, that no good purpose is to be subserved by these distinctions, but the argument was answered by Staples, J.: "It is sufficient to say that they exist, having their origin in well-established principles.    In the language of Chief Justice Marshall, they have taken such firm hold of the law they can only be removed by the power of legislation."

The common law principles thus referred to by Staples, J., apply as well to the case we have under consideration as to the case he was then discussing, for the reason that a partner is but an agent of the partnership, and his rights, powers, duties, and obligations are in many respects governed by the same rules and principles as those of an agent.

In answer to the argument that the solemnity attaching to a sealed instrument no longer exists; that under the business conditions of this day no difference in facts exists between a sealed and an unsealed instrument, and that the former decisions of this court to the contrary should be overruled, we cannot do better than to add to the quotation from *Preston* v. *Hull, supra,* what was so well said by Lee, J., in answering a similar argu-

ment in *Stinchcomb* v. *Marsh*, 15 Gratt. 211, namely: "That a spirit of self-reliance and directness of purpose, as suggested by counsel in argument, will prompt the people of this age and country to disregard the formalities of conveyancing, and the rules of law by which they are described, can constitute no sufficient reason, nor furnish any adequate authority to the court to change the law or overthrow plain, intelligible, and well-settled legal principles. That is the province of the Legislature, not of the judiciary. For the latter to undertake to mold the law so as to be adapted to the loose and careless modes of conducting business transactions which are said to prevail would be but to inaugurate uncertainty and confusion in the administration of justice, and lead to evils which, though not at once foreseen and appreciated, might prove far greater and more to be deplored than the hardship which may occur in individual cases from an adherence to the settled rules of law, but which at last must be traced to the parties' own improvidence and want of reasonable care and precaution."

In view of the fact that the decision in the case of *Preston* v. *Hull, supra,* approved in *Penn* v. *Hamlett, supra,* and which contains the latest discussion by this court of this subject, has stood unchallenged for nearly thirty years, and the Legislature, in its wisdom, has not seen fit to remove the distinctions between sealed and unsealed instruments, even as to partnership obligations, we would be unwarranted in not adhering to the principles said in that case to have taken such firm hold of the law that they can only be removed by the power of the Legislature.

It follows, therefore, that the second instruction asked for by Dr. Gordon, the defendant, (the plaintiff in error here,) rightly propounded the law applicable to this case, and should have been given.

As the judgment of the Circuit Court, for the reasons stated, has to be reversed and annulled, the verdict of the jury set

aside, and the cause remanded for a new trial to be had in accordance with the views herein expressed, we prefer to go no farther in reviewing the evidence than has been necessary in disposing of the assignments of error relating to the rulings of the Circuit Court in the progress of the last trial.

*Reversed.*