# CRIMINAL CASES.

## Richmond.

### EMMA BONNER V. COMMONWEALTH.

January 15, 1925.

1. APPEAL AND ERROR—*Assignment of Error—Homicide—Death from Fire of Incendiary Origin.*—In the instant case, a prosecution for homicide by arson, there was no assignment of error which challenged the sufficiency of the evidence to establish the fact that the fire was incendiary in its origin. Therefore that subject could not be considered on appeal.

2. CRIMINAL LAW—*Evidence Sufficient to Sustain a Conviction—Opportunity, Corpus Delicti, and Motive.*—There are Virginia decisions that where the case presented by the record goes no further than to show proof merely of the *corpus delicti* and that the accused had a motive and an opportunity to commit the crime, the evidence is insufficient to sustain a conviction. Yet in those cases there was evidence, either of statements of the accused, or other testimony, giving a reasonable account of the movements of the accused before and after, and of where he was at or about the time the crime was committed; which account was entirely consistent with the testimony for the Commonwealth.

3. HOMICIDE—*Evidence Sufficient to Sustain a Conviction—Opportunity, Corpus Delicti, and Motive—Case at Bar.*—In the instant case, a prosecution for homicide, the evidence established the *corpus delicti*, motive of accused for the crime and an opportunity to commit the crime. In addition, accused so far from giving a reasonable account of her movements, set up the defense of *alibi*, which *alibi* was not asserted until the trial and this delay was unexplained. There were also circumstances in the case from which it might be inferred that accused could have produced evidence as to her movements, if innocent, and no such evidence was introduced in her behalf. There was testimony that accused when returning from the vicinity of the crime was seen to "duck" out into a field to avoid observation.

*Held:* That there was sufficient evidence to sustain a verdict of guilty.

4. APPEAL AND ERROR—*Harmless Error—Immaterial Evidence.*—Where it was apparent from the record that no prejudice could have resulted to the accused from a question and answer of a witness for the Commonwealth, as to where he was on a certain date, his whereabouts on that date being immaterial, the error, if any, is harmless.

5. APPEAL AND ERROR—*Harmless Error—Witnesses—Leading Questions.*—Where it was apparent from the record that no prejudice could have resulted to the accused from the asking or the answering of leading questions, the error is harmless.

6. CRIMINAL LAW—*Trial—Exclusion of Witnesses from the Court.*—Where, in a prosecution for murder, the court had excluded from the courtroom all the witnesses but the one testifying, the trial court did not err in allowing a witness for the Commonwealth, who was in court only when a certain witness was testifying, to testify in rebuttal as to a conversation he had with a different witness from that whose testimony was given while he was in the court room, as accused could not have been prejudiced thereby.

Error to a judgment of the Circuit Court of Prince George county.

*Affirmed.*

The indictment charged the accused and one James Winfield with the crime of murder in the first degree, consisting of the wilful, deliberate and premeditated killing of one Rosa Bonner in the commission by them of the crime of arson by means of setting fire to and burning the dwelling house of Rosa Bonner and Rosa Bonner, herself, who was within such house at the time of such burning, thereby inflicting upon the person of the latter divers mortal wounds, burns and blisters, of which the latter then and there instantly died. The accused elected to be and was tried separately. The verdict found her guilty as charged in the indictment, and fixed her punishment at life imprisonment in the State penitentiary. The judgment under review was entered accordingly.

The following is the chief assignment of error: "The court erred in refusing to set aside the verdict of the

jury and to grant the defendant a new trial because said verdict was contrary to the law and the evidence as set forth in this certificate of evidence, for the reason that there was a missing link in the chain of evidence from Baxter road to the home of Rosa Bonner, which was a mile and a quarter, and the Commonwealth did not at any time connect the accused with the home of Rosa Bonner and no witness testified that she was seen closer than Baxter road. Therefore, the verdict should have been set aside and a new trial granted your petitioner, as the evidence was plainly insufficient to sustain the verdict."

The other assignments of error are mentioned in the opinion.

As bearing upon the question presented by the assignment of error above copied, the following appears from the record before us:

At the time of the death of the deceased the accused held and was the beneficiary named in two policies of insurance on the life of the deceased, one for $130.00 and the other for $120.00, which were procured on applications for the insurance made therefor, not by the deceased, but by the accused, and without the knowledge or consent of the deceased so far as appears in evidence. One of these policies was issued in July, 1921. The evidence does not show the date of the issue of the other policy. This insurance was collected by the accused on both policies, a very short time after the death of the deceased.

The deceased, Rosa Bonner, was burned to death in her dwelling house on the night of April 8, 1923, between seven and eight thirty o'clock. She was about seventy-seven years old at the time. She lived alone, in great poverty, with no known enemies, in the small dwelling house in which she was burned, which was

totally destroyed by the fire and which was located in a sparsely settled country neighborhood some distance from Petersburg (the precise distance not being shown in evidence), about one and one-half miles from New Bohemia, a station on the Norfolk and Western railroad between Petersburg and Disputanta.

As tending to connect the accused with the crime charged in the indictment, there was direct testimony for the Commonwealth showing the following: The accused lived in Petersburg. On the afternoon of April 8th, the accused and James Winfield were driven in a hired automobile from Petersburg to New Bohemia, leaving Petersburg about five o'clock that afternoon and arriving at New Bohemia before dark. On reaching the latter place, they got out of the automobile; the accused paid the automobile driver his charges; and the latter, on being told by them that his further services were not needed, returned to Petersburg. The testimony for the Commonwealth of persons who passed them on the road at the different times now to be mentioned, and who either knew and recognized the accused, or gave such descriptions of her and of Winfield as fully warranted the jury in identifying them as the accused and Winfield, traced their movements as follows: They were seen just as they were leaving New Bohemia, soon after they arrived there, walking along a certain road, going in the direction of the dwelling of the deceased, being then in about one and one-half miles of such dwelling; and they were seen a little later going in the same direction, when they had reached a point on the same road about one mile from said dwelling. This was before the fire in question, and they were seen not to have any satchel with them. Shortly after the dwelling had been discovered by witnesses, who lived in sight of it, to be on fire, to-wit, about eight o'clock the same

night, the accused and Winfield were seen coming from the direction of the dwelling at a point about one-half a mile therefrom, walking, Winfield at that time carrying a satchel. They were then going back in the direction of New Bohemia. At this point they were traveling along an old abandoned roadway off to one side of the improved highway, the latter alone being used by vehicles, and an automobile was just then passing along the highway. As the automobile approached they (to use the expression of the witness who testified as to this) "ducked out a pretty good ways out of the light of the car * * out in the field," a distance of twenty feet, as estimated by the witness. About an hour later (about nine o'clock that night), the accused and Winfield were seen walking on the road between New Bohemia and Petersburg, about a mile from the former and going in the direction of the latter place.

On the trial the accused asserted the defense that she and Winfield were at their home in Petersburg on the afternoon and night of April 8th in question. Several witnesses were introduced for the defense who testified positively to the *alibi* just mentioned. Neither the accused nor Winfield testified in the case, and the accused did not introduce any evidence accounting for her journey to and from the vicinity of the crime shown by the evidence for the Commonwealth. And the evidence shows that no defense of an *alibi* was made by the accused prior to the trial.

*William F. Denny*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The chief question presented by the assignments, and that on which the decision turns, is the following:

1. Was there sufficient evidence before the jury to sustain the verdict in its finding connecting the accused with the crime charged?

The question must be answered in the affirmative.

[1] There is no assignment of error which challenges the sufficiency of the evidence to establish the fact that the fire was incendiary in its origin.  Therefore, we do not deal with the evidence on that subject.

[2, 3] No authority is cited to sustain the position taken for the accused that the evidence was insufficient to connect the accused with the crime, and we know of none that does so.  There have been decisions of this court holding that where the case presented by the record goes no further than to show proof merely of the *corpus delicti* and that the accused had a motive and an opportunity to commit the crime, the evidence is insufficient to sustain a conviction. *Garner's Case*, 26 S. E. 507, 2 Va. Dec. 458; *Anderson's Case*, 83 Va. 326, 2 S. E. 281; *Jones' Case*, 103 Va. 1012, 49 S. E. 663; and *Burton & Conquest's Case*, 108 Va. 892, 62 S. E. 376. But in all of those cases there was evidence, either of statements of the accused, or other testimony, giving a reasonable account of the movements of the accused before and after, and of where he was at or about the time the crime was committed; which account was entirely consistent with the testimony for the Commonwealth.  This cannot be said of the instant case.  In this case the testimony introduced in behalf of the accused on the trial, attempting to account for her movements and whereabouts, was in absolute conflict with

the testimony for the Commonwealth on the subject. Both could not be true. Further, the defense of an *alibi* was not asserted when it could have been first made, and not until the trial; and this delay is not explained. And since the jury found the accused guilty, it found in effect that the attempt of the accused to set up an *alibi* on the trial was an afterthought and contrivance to defeat the ends of justice. Moreover, in the instant case, according to the testimony for the Commonwealth, which the verdict shows was believed by the jury to be true, the accused and her companion did not have the satchel with them until they were returning from the vicinity of the crime. They must, therefore, have obtained this satchel from some place in that vicinity, evidence as to which would have been pertinent and material in favor of the accused, if she was innocent of the offense charged; and in such case doubtless some evidence on this subject could have been furnished by the testimony of some one other than the accused and her companion. No such evidence was introduced in behalf of the accused.

In *Dean's Case*, 32 Gratt. (73 Va.) 912, at page 925, this is said: "Now the failure, unexplained, to assert the defense of an *alibi* when it could first be made, and, if true, would be conclusive, is always regarded by the text writers on circumstantial evidence as a most suspicious circumstance." And this is there further said: "Wherever pertinent and material evidence, by which an *alibi* might, if true, have been supported, is withheld, or is the result of afterthought or contrivance, the attempt to set it up recoils with fatal effect upon the party who asserts it."

There was in the evidence before the jury in the instant case a further pregnant circumstance indicating the guilt of the accused (like which there was nothing in

the four cases first above cited), namely, that she and her companion, when returning from the vicinity of the crime, were seen to "duck" out into the field solely to avoid the light of a passing automobile, as the jury, under the circumstances, were warranted in believing.

In *Dean's Case, supra,* this also is said: "Here then we have a case of circumstantial evidence, where time, place, motive, * * and conduct concur in pointing out the accused as the perpetrator of the crime. * * Here is an humble man, living in the country, with no large number of acquaintances, his daily life limited to comparatively a narrow circle. No human being is suggested as being his enemy; no one is found as having a motive to commit the deed; there is no trace or vestige of any other agent save Daniel Dean. In him we have all the facts and circumstances concurring and concentrating as the guilty agent. They all point to him and to no one else. They declare that he is the murderer." We feel that the same may be justly said, in substance, of the evidence in the instant case.

There are only three assignments of error other than that dealt with above, none of which presents anything which would warrant the court in disturbing the verdict and judgment under review. Of these matters it is deemed sufficient to say this:

[4, 5] One of the three assignments of error mentioned relates to a witness for the Commonwealth being allowed to be asked and to answer as to where he was on the 8th *day* of April (his whereabouts prior to the night of that day being immaterial); and another to a witness being allowed to be asked a leading question on another subject, upon which there was other abundant evidence. It is apparent from the record that no prejudice could have resulted to the accused from the asking or the an-

swering of these questions. Hence, there is no merit in such assignments of error.

[6] The remaining assignment of error relates to the action of the court, after it had ordered that all witnesses except the one testifying be excluded from the court room during the trial, in allowing a witness for the Commonwealth, who was in court only when a certain witness was testifying, to testify in rebuttal as to a conversation he had with a different witness from that whose testimony was given while he was in the court room. The trial court certifies that it allowed such testimony because it was "of opinion * * that nothing in the premises had operated or would operate any prejudice to the accused." We think the trial court was plainly right in this opinion and that there was no error in its action in question. See *Jarrell's Case*, 132 Va. 551, 567-8, 110 S. E. 430; *Wash. & O. D. Co. v. Ward*, 119 Va. 334, 336-7, 89 S. E. 140.

The case must be affirmed.

*Affirmed.*