# Richmond.

## GILBERT NELSON v. COMMONWEALTH OF VIRGINIA.

November 14, 1929.

The opinion states the case.

*Revercomb & Revercomb* and *R. B. Stephenson*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Rogers Nelson, a negro man, was murdered in Alleghany county on July 18, 1928. For that crime Gilbert Nelson, his brother, Jasper Nelson and Murrill Nelson, Gilbert's wife, were jointly indicted and charged with murder. In due course a jury found the defendant, Gilbert Nelson, guilty of murder in the second degree, and fixed his punishment at fifteen years con-

finement in the State penitentiary. That verdict was approved by the trial judge and is now before us on a writ of error.

■ In considering the assignments we will, for convenience, first take up the claim that the judgment is wholly unsupported by evidence. That proposition has been earnestly advanced and ably sustained in argument, but we are to remember that this case comes before us with a verdict upheld by the trial judge. If it can be sustained by the Commonwealth's testimony, then it is the duty of this court to sustain it—a proposition so frequently reiterated as to have become settled law in Virginia.

Wells Nelson, another negro, conducted a small store on the road from Covington to Hot Springs. In it, on the evening of July 18th, a number of negroes had congregated. A quarrel developed between Murrill, wife of the accused, and Rogers Nelson. Rogers struck her; Gilbert then hit him on the head with a poker. Rogers turned to attack Gilbert and a fight between them, attended by the confusion which might have been expected, ensued. The combatants, still fighting, went out of the back door. One witness said that they "flew" out of it, Rogers first, with Gilbert after him. Gilbert still held the poker and appears to have hit Rogers a second time, but dropped it by the door. Rogers turned to the left and disappeared in the dark with Gilbert after him. "They hit the big road and went towards the macadam road." Blows were heard, body blows, described as "kind of smug licks." After a while Gilbert came back "walking pretty fast." Rogers was never again seen alive. There is conflict of testimony as to the time which intervened between the exit of the fighters and Gilbert's return. John King was asked:

"Q. You could hear them going. It is pretty close to the store that you heard those licks?

"A. They had got a good piece away.

"Q. You don't know how far they went?

"A. No, sir."

Eugene King testified as to Gilbert's return as follows:

"Q. Did you see Gilbert any more?

"A. Gilbert went back in the store ahead of me when I went back in.

"Q. How long after that?

"A. I don't know, sir. Not very short and not so long."

John King who had heard blows delivered in the dark was questioned as to how far he thought these men were from the store at that time. This is his statement:

"Q. Could they have gotten very far when these licks were passed?

"A. No, sir. Couldn't have been more than to the macadam from the time they left out there."

On the other hand, witnesses for the defendant say that he came back into the store almost immediately.

This is the substance of the evidence which tends to sustain the Commonwealth: These two men were engaged in a fight in the storeroom. They broke out of the back door; Rogers ran into the dark, pursued by Gilbert; blows were heard not far away, at some place which could not have been beyond the macadam, and after the elapse of a period "not so long and not so short" Gilbert reappeared, walking rapidly.

Wells Nelson's store, as we have seen, fronted on a paved road leading to the Hot Springs. By his back door passed the county road which curved into the paved road on the Hot Springs side within 170 or 180

feet. Near its point of entry was a considerable pool of blood. Across this road from it to the right, forty-five feet away, Rogers' body was found. From the back door in the direction in which these men went, small drops of blood could be traced for thirty or forty feet, but no other blood marks appeared until the pool was reached. There were traces from that point to the body.

Warren Lemmon had brought to the store for Murrill, in his truck, a gallon of milk, 100 pounds of ice and an ice cream freezer, it apparently being her intention to give a dinner next day. His truck was parked on the right hand side of the road to Hot Springs just above the store and 110 feet from the pool of blood. It was possible to see a person on the hard surface road probably thirty or forty yards away, but this truck owner was not on his truck when the fight occurred; he was in the store.

A short time after Gilbert's return to the store the party broke up and went out by way of the front door. As they came out, Murrill asked Gilbert if he was going home. He replied: "No; let's go up to Aunt Etta's," and this they did, walking rapidly. Etta Nelson is the aunt of Gilbert and Jasper, and lives in the general direction of Hot Springs from the store-house. Gilbert's home is nearer to it than Etta's. The reason assigned for the choice so made by the defendant was that he was afraid to go home in the dark, that he was afraid Rogers might waylay him. Gilbert and his wife did go to Etta's home, and when they reached it Jasper was with them. Jasper said he overtook them on the way. These parties remained at this home all night. In other words, this testimony tends to show an *alibi*. The claim is made that the accused went directly from the store to his aunt's and could not have seen Rogers

afterwards or have touched his body, but this *alibi* is based upon the testimony of witnesses highly interested and may not have been credited by the jury. Coming back to the immediate homicide, Rogers was cut about the body in several places and was stabbed through the heart. The examining physician said that this wound was the immediate cause of death, and that in all probability he died at once. Just where he was killed we may never know. How his body was carried to the point of discovery or when is also hidden, but this inescapable fact remains: Rogers fled from the house with Gilbert after him and was never seen alive again.

So far as the evidence shows, Rogers was without an enemy in the world. No reason worthy of serious consideration for his murder by another is suggested in the record.

■ What was said in *Dean's Case*, 32 Gratt. (73 Va.) 912, and quoted with approval in *Bonner v. Commonwealth*, 141 Va. 395, 126 S. E. 198, 200, applies with full force here: "Here then we have a case of circumstantial evidence, where time, place, motive * * * and conduct concur in pointing out the accused as the perpetrator of the crime. * * Here is an humble man, living in the country, with no large number of acquaintances, his daily life limited to comparatively a narrow circle. No human being is suggested as being his enemy; no one is found as having a motive to commit the deed; there is no trace or vestige of any other agent save Daniel Dean. In him we have all the facts and circumstances concurring and concentrating as the guilty agent. They all point to him and to no one else. They declare that he is the murderer."

■ We have not undertaken to discuss the evidence introduced on behalf of the defendant. It

suffices to say that, if believed, Gilbert never went but a few feet from the back door of the store, and could not possibly have delivered a blow instantaneously fatal as far away as the blood pool, nor then have removed Rogers' body to the spot where it was found. After his return to the store building he was constantly with others and so had no opportunity to move it at a later time. If this were true, his guilt would be highly improbable, but the jury manifestly did not believe it to be true. The Commonwealth's case, restated, is this: One man was heard fighting with another in the dark, after which one of these combatants was never seen alive, but his body was found on the following morning 200 feet or less away from the point of combat. In such circumstances we cannot say that a verdict of guilty is plainly wrong or without evidence to support it.

In assignment of error No. 1, it is said that the court erred in permitting counsel for the prosecution to cross-examine John King. This witness was introduced on behalf of the Commonwealth and during the course of his examination, in the judgment both of the Commonwealth's attorney and of the court, appeared to be adverse. Thereupon counsel who had introduced him was permitted to cross-examine him. It is contended that in such circumstances the provisions of section 6215 of the Code 1919 govern, and the court should have instructed the jury that it could only consider the evidence of inconsistent statements made by the witness for the purpose of contradicting him. The trial court was of opinion that cross-examination was permissible under section 6214 of the Code 1919, which reads as follows:

"A party called to testify for another, having an

adverse interest, may be examined by such other party according to the rules applicable to cross-examination."

It is not claimed that this witness did not, in fact, prove adverse.

■ Judge Whittle, in *Murphy's Hotel* v. *Cuddy's Admr.*, 124 Va. 207, 97 S. E. 794, 798, said: "The contention that section 3351 [now section 6214 of the Code] does not apply because the witness was not shown to have an 'adverse interest' cannot be maintained. The section has expressly been held to apply where the witness has no adverse interest, but is shown to be adverse or hostile to the party introducing him. *Gordon* v. *Funkhouser*, 100 Va. 675, 42 S. E. 677; *McCue's Case*, 103 Va. 870, 49 S. E. 623; *Green* v. *Commonwealth*, 122 Va. 862, 94 S. E. 940.

■ "That necessarily great latitude must be allowed to trial courts in the matter of examining witnesses has repeatedly been held by this court. The following cases sufficiently illustrate the rule: *Wickham* v. *Turpin*, 112 Va. 236, 70 S. E. 514; *Abernathy* v. *Emporia Mfg. Co.*, 122 Va. 406, 95 S. E. 418."

In *Pendleton* v. *Commonwealth*, 131 Va. 679, 109 S. E. 201, 211, the court said: "As held in *Gordon* v. *Funkhouser* [100 Va. 675, 42 S. E. 677], 100 Va. 825, 41 S. E. 746, 57 L. R. A. 744, although it be not shown that a witness has an adverse interest, if it appears that the witness is in fact adverse, the statute is applicable.

"Under the circumstances above narrated, we think that there was no error in the action of the trial court stated. That action amounted in substance to no more than to allow the witness, who was in fact adverse, to be examined as an adverse witness under the statute."

This assignment is without merit.

Assignments numbered 2, 3, 5, 6, 7, 8 and 9 are all addressed to remarks of and questions asked by the court during the progress of the trial. Since this case must be retried for other reasons, and since these exact matters will not in all human probability come up again, their detailed discussion is unnecessary, although their examination discloses no reversible error. The court did upon one occasion observe that certain admitted testimony was immaterial. It was immaterial and so there was no error. A witness, Russell Lemmon, had won from Rogers, on the day of his death, $26.00 pitching horseshoes, and gave him back $19.00. He heard Rogers say that he had $40.00. Afterwards he testified that he went on the day following to Covington on a bus and left that town on a train, and that Rogers' wife chanced to travel at the same time on the same conveyances. This is all that was before the court. We, too, think it immaterial. It was competent for the accused to show that Rogers was killed by Lemmon, or by anybody else, but this testimony neither shows nor tends to show any such fact.

Of course any manifestation of bias on the part of the presiding judge is improper, but he should see that all pertinent facts are brought out and brought out uncolored; not more and not less is guaranteed to the accused. He is entitled to a fair trial. When this has been accorded he must rest content.

It is true that trial judges in this State do not enjoy that freedom of action sometimes elsewhere accorded, but in Virginia they are something more than moderators, and are charged with high duties. Matters essential to fair judgment should be made clear, for the paramount purpose of every trial is to see that justice is done.

This matter received extended consideration in *Mazer* v. *Commonwealth*, 142 Va. 649, 128 S. E. 514, and we are certainly not prepared to extend the rule there stated.

 Next it is said that the court erred in excluding this testimony given by Mr. Moomaw:

"Q. Did Russell Lemmon tell you on the morning that you saw him after the death of Rogers Nelson, in Covington, anything about the injury to Rogers Nelson, or his death?

"A. Yes.

"Q. State what it was.

"A. I was in a great hurry that morning. I was just leaving and Russell told me, says: "Gilbert is in a little trouble,' and I said: 'What is it?', and he said: 'He and Rogers were in a fight last night;' and I asked him if Rogers was hurt badly and he said: 'Yes, pretty badly.' That was the extent of our conversation on the matter."

This evidence was plainly hearsay. Lemmon's dealings with Rogers have heretofore been noted. While he was not present at the fight and did not know that Rogers had been killed, it is reasonable to assume that he knew about the difficulty and that it was the subject of gossip in this little negro settlement of which he was a member. Moreover, as the trial court observed: "Russell Lemmon was the witness of the defendants and the defendant did not ask him anything about this conversation and did not seek to contradict him and did not have a right to contradict his own witness, if it be a contradiction, without first laying the foundation."

No foundation had been in fact laid. Code 1919, section 6215. Lemmon had made no threats and the bare suggestion that he murdered Rogers because he

knew that Rogers had $40.00 is too remote for serious consideration. It is in fact but a bare suggestion.

Exception is taken to instruction No. 1 given on behalf of the Commonwealth. This is the instruction:

"The court instructs the jury that the accused is presumed to be innocent and that that presumption goes with him through all stages of the trial until the Commonwealth, upon whom the burden of proof rests, has shown beyond a reasonable doubt that the defendant is guilty. A doubt engendered by sympathy or by a dislike to accept the responsibility of convicting the defendant is not a reasonable doubt. The law does not require proof amounting to absolute certainty, nor proof beyond all possibility of mistake. If, after having carefully and impartially heard and weighed all of the evidence, you reach the conclusion that the defendant is guilty with such degree of certainty that you would act upon the faith of it in your own most important and critical affairs, then the evidence is sufficient to warrant a verdict of guilty."

Criticism is made of the statement that proof amounting to absolute certainty, or proof beyond all possibility of mistake, is not required. Certainly this statement of the law is unobjectionable. There is no such thing as absolute certainty in proof. Circumstantial evidence is constantly relied upon. Even the testimony of an eye-witness does not measure up to such a standard. There is the possibility of perjury.

Criticism is also made of the last sentence in the instruction. It is said that this sentence does not tell the jury that they must reach the conclusion from the evidence, and does not say what reasonable doubt is. This part of the instruction does not undertake to say in terms what is reasonable doubt, but it does tell the jury what degree of proof is necessary before con-

viction can be had. *McCue* v. *Commonwealth*, 103 Va.
870, 49 S. E. 623 629.

Keith, P., in the case last cited, said: "It would be
impossible to prepare instructions to which an ingeni-
ous critic might not present plausible objection. The
definition of 'reasonable doubt' is attempted by the
court. It is a difficult, if not an impossible, task so to
define it as to satisfy a subtle and metaphysical mind
bent upon the detection of some point, however
attenuated, upon which to hang a criticism."

There is no merit in this assignment.

 Objection is made to this instruction: "The
court instructs the jury that you can and should draw
reasonable inferences from the facts proven. A verdict
of guilty may be founded entirely on circumstantial
evidence if such evidence shows the guilt of the de-
fendant beyond a reasonable doubt."

The court, during the course of instructions given, so
frequently told the jury that the burden was upon the
Commonwealth to prove Gilbert guilty beyond all
reasonable doubt that we do not see how it could have
been misled.

 Objection is made to instruction 3: "The
court instructs the jury that every homicide in Virginia
is presumed to be murder in the second degree. In
order to elevate the offense to murder in the first degree,
the burden of proof is upon the Commonwealth, and to
reduce the offense to manslaughter, the burden of
proof is upon the prisoner."

This is a stock instruction, repeatedly approved by
this court. *Sims* v. *Commonwealth*, 134 Va. 736, 115
S. E. 382.

A number of objections are made to instructions 5,
and 6. They are:

5. "The court instructs the jury that if they believe

from the evidence in this case beyond a reasonable doubt that the defendant, Gilbert Nelson, killed Rogers Nelson, or that Jasper Nelson or Murrill Nelson killed him, and that Gilbert Nelson was present aiding, abetting, counseling, advising or consenting to said crime and that such killing was willful, deliberate and premeditated, you should find the defendant guilty of murder in the first degree and fix his punishment by death, or by confinement in the penitentiary for life, or for any term not less than twenty years. If, however, you believe from the evidence that such killing was willful and deliberate, but not premeditated, you should find the defendant guilty of murder in the second degree and fix his punishment by confinement in the penitentiary not less than five nor more than twenty years.''

6. ''The court instructs the jury that to constitute murder in the first degree, the prisoner, or Jasper Nelson and/or Murrill Nelson in consort with the prisoner must have been incited to the killing by malice, and the killing must have been a willful, deliberate and premeditated act on the part of the prisoner, or Jasper Nelson and/or Murrell Nelson in consort with the prisoner; that is to say, he, or they, must have willed, deliberated and premeditated that he, or they, should kill the deceased or do him some serious bodily injury, the necessary results of which would be his death, and from which he died; and to constitute a willful, deliberate and premeditated killing, it is not necessary that the intent to kill should exist for any particular length of time prior to the actual killing. It is only necessary that such intention should come into existence for the first time at the time of such killing or any time previously.''

It is said that these instructions are objection-

able in that the indictment contains only one count, charging the accused, Jasper Nelson and Murrill Nelson with having jointly murdered the deceased, and that for this reason it was erroneous to tell the jury that they could convict the accused if they found from the evidence that he was guilty as principal either in the first or second degree. There is no merit in this. 10 Ency. Pl. & Pr. 156-157; *Brister* v. *State*, 26 Ala. 107, 131; *Commonwealth* v. *Chapman*, 11 Cush. (Mass.) 422; and *Boggs* v. *Commonwealth*, *ante*, page 828, 149 S. E. 445, decided by this court on September 19, 1929.

 Complaint is also made of instruction 5, because it told the jury that if they believed from the evidence that the defendant was guilty they might so find, without stating that they must believe the necessary facts beyond a reasonable doubt.

It is neither necessary nor desirable to cumber instructions with repeated reminders of this fundamental rule. When that has been once clearly stated, reiteration is not required.

 It is also said that there is no evidence in the record upon which to base instructions upon the theory that the homicide was the joint act of these several defendants, or that the accused was present aiding and abetting in its commission. This is urged in the petition for appeal, but it was not suggested when the instructions were given, and so cannot, under Rule 22, be considered. Had it been taken at the proper time, we might sustain it, for there is no such evidence.

 Instructions G-1 and G-2 were tendered on behalf of the accused and rejected. They deal with burden of proof, reasonable doubt and the presumption of innocence. Those subjects were satisfactorily covered in other instructions. They should have been refused.

■ This is instruction H, as tendered: "The court instructs the jury that if the defendant, Gilbert Nelson, struck the deceased, Rogers Nelson, with an iron poker while they were in the store, and that said blow was not sufficient to cause death, and after Rogers Nelson left the store someone else, other than the defendant, inflicted the wounds which caused the death of Rogers Nelson, then the jury cannot find the defendant guilty in this case, and the court instructs the jury that they should find the defendant not guilty."

It was amended and given in this form: "The court instructs the jury that if the defendant, Gilbert Nelson, struck the deceased, Rogers Nelson, with an iron poker while they were in the store, and that said blow was not sufficient to cause death, and after Rogers Nelson left the store someone else other than the defendant or Jasper Nelson and or Murrill Nelson in his presence as set out in instruction No. 5 inflicted the wound which caused the death of Rogers Nelson, then the jury cannot find the defendant guilty in this case, and the court instructs the jury that they should find the defendant not guilty."

It should have been given as tendered, for there is no evidence to show that the deceased was killed by Jasper Nelson or Murrill Nelson, or in their presence. It was a theory unsupported by the record.

Instruction Y deals with reasonable doubt and the presumption of innocence. That subject has been covered.

■ This is instruction X: "The court instructs the jury that upon the trial of a criminal case by a jury the law contemplates the concurrence of twelve minds in the conclusion of guilt before a conviction can be had. Each individual juror must be satisfied beyond a

reasonable doubt of the defendant's guilt before he can, under his oath, consent to a verdict of guilty. Each juror should feel the responsibility resting upon him as a member of the jury, and should realize that his own mind must be convinced beyond a reasonable doubt of defendant's guilt before he can consent to a verdict of guilty. Therefore, if any individual member of the jury, after having duly considered all the evidence in the case and after consultation with his fellow-jurors should entertain such reasonable doubt of defendant's guilt as is set forth in certain other instructions in this case, it is his duty not to surrender his own convictions simply because the balance of the jury entertain different convictions."

It was an invitation to the jury to hang and should have been rejected. *Sims* v. *Commonwealth*, 134 Va. 736, 756, 115 S. E. 382.

Instructions Z and S, in the language of the petition, "simply state in plain language that the jury must be convinced from the evidence of the guilt of the accused to the exclusion of any other reasonable way, or hypothesis, and we think state the law clearly." All of this the jury has been told.

 Instruction R deals with conspiracy. As has heretofore been stated, there is no evidence of conspiracy and so there was no error in its rejection.

Other objections to instructions are raised but their consideration is unnecessary. Subject to exceptions stated, the case was fairly submitted to the jury. The piling of instruction upon instruction does not help the jury and treads close upon the heels of invited error.

For reasons stated—that is, for the giving of instruction H as amended—the judgment is reversed and the case remanded to be retried in harmony with the views stated.

*Reversed and remanded.*