COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Annunziata
Argued by teleconference


JAMES O'NEAL KELLY

MEMORANDUM OPINION[*] BY
v.        Record No. 0103-08-2                     JUDGE ROBERT J. HUMPHREYS
JANUARY 27, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WESTMORELAND COUNTY
Buford M. Parsons, Jr., Judge Designate

Brent A. Jackson (The Jackson Law Group, P.C., on brief), for
appellant.

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


James O'Neal Kelly ("appellant") appeals his convictions for three counts of malicious

wounding, in violation of Code § 18.2-51,[1] three counts of attempted murder, in violation of

Code §§ 18.2-26 and 18.2-32, one count of use of a firearm while committing a felony, in

violation of Code § 18.2-53.1, and one count of knowingly possessing a firearm after having

been convicted of a felony, in violation of Code § 18.2-308.2(A). Appellant contends that the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Court notes that the conviction order indicates that the appellant was found guilty
of malicious wounding in Circuit Court Nos. CR07-412, CR07-452 and CR07-454 in violation
of Code § 18.2-51.2. The sentencing order, in CR07-452 and CR07-454, indicates that appellant
was convicted of malicious wounding in violation of Code § 18.2-51; in CR07-412, the
sentencing order indicates that appellant was convicted of malicious wounding in violation of
Code § 18.2-51.2. However, from a review of the record, it is clear that the appellant was
convicted of three counts of malicious wounding in violation of Code § 18.2-51. Accordingly,
we conclude that the orders reflect a clerical error, and this matter is remanded to the trial court
for the sole purpose of correcting the said orders to reflect that the appellant was convicted of
three counts of malicious wounding under Code § 18.2-51.

trial court erred in not allowing the introduction of extrinsic evidence to prove prior inconsistent statements made by the Commonwealth's witnesses. For the reasons that follow, we disagree and affirm his convictions.

On appeal, we will not overturn a trial court's exercise of discretion to admit or exclude evidence unless the court abused its discretion. May v. Caruso, 264 Va. 358, 362, 568 S.E.2d 690, 692 (2002).

"It is fundamental to the right of cross-examination that a witness who is not a party to the case on trial may be impeached by prior statements made by the witness which are inconsistent with his present testimony . . . ." Hall v. Commonwealth, 233 Va. 369, 374, 355 S.E.2d 591, 594 (1987) (citing Thornton v. Downes, 177 Va. 451, 459, 14 S.E.2d 345, 348 (1941)). Such statements are admissible for purposes of impeachment but inadmissible "to prove the truth of the matter asserted." Groggins v. Commonwealth, 34 Va. App. 19, 24, 537 S.E.2d 605, 607 (2000). However, "[b]efore any prior inconsistent statement may be used to impeach a witness, a proper foundation for such use must first be laid. This is accomplished during the cross-examination of the witness to be impeached." Charles E. Friend, The Law of Evidence in Virginia § 4-5(c)(1), at 147 (6th ed. 2003).

"[T]he foundation should be laid by first *calling the attention of the witness to the alleged inconsistent statement and enquiring whether he made it*." Adams v. Ristine, 138 Va. 273, 293, 122 S.E. 126, 132 (1924) (emphasis added). "In directing the witness's attention to the prior statement, the cross-examiner must provide sufficient details about the occasion alluded to to warn the witness and to enable him to prepare to explain or disprove the alleged inconsistency." Friend, supra, at 147. "After the foundation is laid, '[t]he witness may then usually be impeached by the introduction of evidence to prove that the prior inconsistent statement was in

fact made.'" Edwards v. Commonwealth, 19 Va. App. 568, 571, 454 S.E.2d 1, 2 (1995) (quoting Friend, supra, § 4-3(d), at 123).

In this case, appellant attempted to impeach the testimony of two of the Commonwealth's witnesses by introducing prior inconsistent statements made by each to a third party, Kevin Kelly ("Kelly").[2] According to appellant, Otis Fisher ("Fisher") and Jonathan Smith ("Smith") made statements to Kelly following the shooting that contradicted their testimony at trial. Allegedly, Smith told Kelly that "he did not know who did it" and was only cooperating with the Commonwealth in order to get out of jail. Likewise, Fisher told Kelly that he was testifying to get a deal and in fact, was not even present at the nightclub during the shooting.

However, appellant did not lay a proper foundation for the introduction of Kelly's testimony. During his cross-examination of Fisher and Smith, appellant never confronted either witness with his alleged inconsistent statement. Instead, appellant merely asked Fisher and Smith if they knew Kelly and had discussed the case with him. The following exchange took place during appellant's cross-examination of Fisher:

> Q: Do you know a gentleman by the name of Kevin Kelly?
>
> A: Yeah.
>
> Q: And he is at the Northern Neck Regional jail with you; is that correct?
>
> A: No, he is not with me. He is there.
>
> Q: Did you discuss this case with him?
>
> A: No, I didn't talk to Kevin Kelly.
>
> Q: You have never talked to Kevin Kelly --
>
> A: I have never talked to Kevin Kelly about no case.

_____

[2] Kevin Kelly is unrelated to the appellant in this case.

- 3 -

Q: And never informed him that --

[Prosecutor]: He said he didn't talk to him.

[Defense]: I have Mr. Kevin Kelly here.

A similar exchange occurred during appellant's cross-examination of Smith:

Q: Thank you, sir. Please have a seat. Sir, do you know Kevin Kelly?

A: Kevin Kelly, yeah, I know him.

Q: Did you spend some time in a holding cell when you were coming back to Westmoreland Circuit Court with him?

A: Yeah, we was all in the van together.

Q: During that time period did you converse with him regarding the events that occurred on December 10th at Vet's Inn, or as you know it, Ferman Dixon's?

A: No, I didn't.

Q: So it is your testimony under oath today that you never told him anything about what transpired and what you knew and did not know that day?

A: I didn't talk to nobody.

Nevertheless, appellant maintains that this limited inquiry was sufficient to establish a foundation because Fisher and Smith were "adequately warned of the thrust of the inquiry and [understood] which occasion [was] being referred to." We disagree.

Appellant is correct that the omission of one or more details concerning *the circumstances* under which a prior inconsistent statement was made is not fatal to the admissibility of the statement. See Gordon v. Funkhouser, 100 Va. 675, 42 S.E. 677 (1902). However, this does not relieve appellant of his foundational burden to confront the witness with the prior inconsistent statement itself. Contrary to appellant's position, the omission of the statement is fatal to its later admissibility for impeachment purposes.

This Court addressed a similar situation in <u>Via v. Commonwealth</u>, 42 Va. App. 164, 590 S.E.2d 583 (2004). There the defendant sought to introduce certain love letters written by the victim which, according to the defense, "totally contradicted" her testimony in court. <u>Id.</u> at 184, 590 S.E.2d at 593. However, the trial court refused to admit the letters into evidence. On appeal, we upheld the trial court's ruling stating that "although [defendant's] counsel proffered the love letters for the record, she never identified or proffered any statements in the letters which contradicted [the victim's] testimony, *nor did she bring the letters to* [*the victim's*] *attention* [during cross-examination] or lay any foundation for introduction of the letters as prior inconsistent statements." <u>Id.</u> (emphasis added).

Like the defendant in <u>Via</u>, appellant never confronted Fisher and Smith with their prior inconsistent statements. The purpose of this foundational requirement is "to enable [the witness] to prepare to explain or disprove the alleged inconsistency." Friend, <u>supra</u>, at 147. The witness cannot do so unless he is confronted with the statement itself. Therefore, we hold that the trial court did not abuse its discretion in refusing to admit Kelly's testimony.

Appellant also contends that the trial court prevented him from laying a proper foundation during the cross-examination of Fisher by "affirm[ing] the Commonwealth's objection when counsel commenced to ask the prior inconsistent statement . . . ." However, the record does not support appellant's assertion. This Court only reviews alleged errors of the trial court, not errors of trial counsel. From the transcript, it is clear that the trial court never made any ruling that restricted or prevented the laying of a proper foundation for the impeachment of either Fisher or Smith by confronting them with the substance of their prior inconsistent statements. Consequently, we find this argument to be without merit.

Because appellant did not lay an adequate foundation on cross-examination for the introduction of extrinsic evidence of prior inconsistent statements made by Fisher and Smith, the

trial court did not abuse its discretion in refusing to admit Kelly's testimony. Therefore, we affirm his convictions and remand this matter to the trial court for correction of the clerical error in the conviction and sentencing orders.

<u>Affirmed.</u>