# Richmond

WILBUR F. TROUT *v.* COMMONWEALTH OF VIRGINIA.

November 12, 1936.

Present, All the Justices.

The opinion states the case.

*Weaver & Armstrong*, for the plaintiff in error.

*Abram P. Staples, Attorney-General*, and *Joseph L. Kelly, Jr., Special Assistant*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Wilbur F. Trout was indicted in the Circuit Court of Warren county for the first degree murder of Harvey Saffell. He was convicted by a jury of involuntary manslaughter, and his punishment fixed at four and one-half years in the State penitentiary. That verdict was approved by the trial judge, and is now before us on a writ of error.

There are five assignments of error. The first assignment covers the motion of the accused to set aside the verdict of the jury, and to grant him a new trial because, as set out in bill of exceptions number one, the verdict was contrary to the law and the evidence, and without evidence to support it, and because of the admission of improper evidence. The purpose of this first assignment of error, however, as stated in the petition of counsel for the accused, is to bring before this court "all the evidence and exhibits to the end that this tribunal may have a picture of the whole trial, and thus be better enabled to pass upon the remaining assignments of error."

There can be no serious contention that the evidence is insufficient to support the verdict. The evidence of Clarence Darr, the only eye-witness to the killing except the accused, is sufficient to justify the verdict of the jury, if believed. The accused relied on his plea of self-defense. There was some conflict in the evidence, and an attempt made to contradict and discredit several of the witnesses, including Darr. The jury has passed upon the credibility of the witnesses and the weight to be given to their testimony, and the verdict resolves all conflicts and contradictions in the evidence. The

verdict is not contrary to the evidence, nor is it without evidence to support it.

Assignments of error numbered two, three and four relate to the action of the trial judge in granting leave to the Commonwealth's attorney to cross-examine each of three witnesses, relative to alleged, prior inconsistent statements made to him, or others. These three witnesses were summoned by the Commonwealth, and called to the stand in its behalf, two of them being also summoned by the accused. In each instance the Commonwealth's attorney stated to the trial judge, in chambers, that he was taken by surprise by the testimony given, and that the witnesses had proven adverse to the contention of the Commonwealth, or had made statements supposedly contradictory of their testimony on the stand. Since these assignments of error involve practically the same legal question, they will be considered together.

In the first instance, the witness, who had been previously interviewed by the Commonwealth's attorney, and had been requested to make a full, fair, and complete statement of all he knew about the killing, made afterwards on the witness stand additional statements favorable to the accused, and which he admitted he had not previously related to the Commonwealth's attorney in his interview. The witness assigned as his reason for not informing the Commonwealth's attorney of the additional statements, that he did not desire to become a witness in the case for fear he would lose his position, but after thinking the matter over, he had come to the conclusion that he had no moral right to withhold this testimony from the jury—testimony which he had withheld from the Commonwealth's attorney. It was the opinion of the trial judge that the testimony was adverse, and the motion to cross-examine the witness was granted.

In the second instance, the Commonwealth's attorney likewise alleged that the witness had made to him a prior, different statement from that of her testimony on the stand, as to the physical actions of the accused immediately after the killing. In the opinion of the trial court, her present

testimony was adverse to and inconsistent with the contention of the Commonwealth.

In the third instance, the Commonwealth's attorney alleged to the court that he had been unable, after due diligence, to get the witness to talk to him prior to the trial, and that as he had proved more favorable to the accused than he expected, he wished to cross-examine him as to certain supposed statements, inconsistent with his present testimony, made by the witness in the presence of certain other persons, at a specified time and place, relative to a threat, or threats made by the accused against Saffell, the deceased. Leave was granted by the court.

In each instance the proper foundation for cross-examination was laid by the Commonwealth's attorney. No witnesses were put on the stand by the Commonwealth's attorney, to contradict the witnesses. No instruction as to the purpose or effect of this procedure, was asked of the court by either party. There is nothing in the record to indicate that the attorney for the Commonwealth intended to violate the general rule in seeking thus to bring out these alleged facts. The ruling of the court in these instances is governed by sections 6214 and 6215 of the Virginia Code (Michie 1930).

*Section 6214.* "*How adverse party may be examined.*—A party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination."

*Section 6215.* "*Witness proving adverse; contradiction; prior inconsistent statement.*—A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony, but before said last-mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement. In every such case the

court, if requested by either party, shall instruct the jury not to consider the evidence of such inconsistent statements, except for the purpose of contradicting the witness."

This court has held in *McCue* v. *Commonwealth*, 103 Va. 870, 49 S. E. 623, that Code, section 6214, applies to criminal cases as well as civil cases. The opinion and the ruling is within the sound judicial discretion of the trial judge. The whole case was before him, and he had an opportunity to observe the witnesses, their attitude and demeanor on the stand, and their manner of testifying, and there is nothing to indicate that he abused this discretion.

In *Nelson* v. *Commonwealth*, 153 Va. 909, 150 S. E. 407, 410, Mr. Justice Holt says: "Judge Whittle, in *Murphy's Hotel* v. *Cuddy's Adm'r*, 124 Va. 207, 97 S. E. 794, 798, said: 'The contention that section 3351 (now section 6214 of the Code) does not apply because the witness was not shown to have an "adverse interest" cannot be maintained. The section has expressly been held to apply where the witness has no adverse interest, but is shown to be adverse or hostile to the party introducing him. *Gordon* v. *Funkhouser*, 100 Va. 675, 42 S. E. 677; *McCue's Case*, 103 Va. 870, 49 S. E. 623; *Green* v. *Commonwealth*, 122 Va. 862, 94 S. E. 940.

" 'That necessarily great latitude must be allowed to trial courts in the matter of examining witnesses has repeatedly been held by this court. The following cases sufficiently illustrate the rule: *Wickham & Northrop* v. *Turpin*, 112 Va. 236, 70 S. E. 514; *Abernathy* v. *Emporia Mfg. Co.*, 122 Va. 406, 95 S. E. 418.'

"In *Pendleton* v. *Commonwealth*, 131 Va. (676), 679, 109 S. E. 201, 211, the court said: 'As held in *Gordon* v. *Funkhouser* (100 Va. 675, 42 S. E. 677), 100 Va. 825, 41 S. E. 746, 57 L. R. A. 744, although it be not shown that a witness has an adverse interest, if it appears that the witness is in fact adverse, the statute is applicable.' "

In *Tate* v. *Commonwealth*, 155 Va. 1016, 154 S. E. 508, 511, this court said that while the privilege of cross-examination had been abused, and the ruling of the trial court was

erroneous: "Inasmuch, however, as in any event, the case was one for submission to a jury, we do not, under the circumstances of this case, hold the error sufficient to require a reversal. We perceive no reason to suppose that the jury were unduly affected thereby, or that the verdict would have been different had the ruling been correct." The case of *Hardy* v. *Commonwealth*, 110 Va. 910, 67 S. E. 522, is in accord.

It was further argued that no witnesses were produced to contradict the testimony of these three witnesses. This frequently happens in the trial of cases, and certainly no ruling exists that would penalize the mere failure to successfully contradict the witness, by granting a new trial where no other error exists. In the instant case, the witnesses were positive in their testimony on the stand, and the failure to contradict them by other witnesses, left their testimony to be considered for its full value by the jury, and this can not be said to be unfavorable to the accused. Usually counsel for the accused take advantage of these circumstances to make full comment to the jury on the failure of the Commonwealth to contradict the witnesses. The prosecuting attorney should be allowed full range within the law to present the Commonwealth's case, and to bring out all material evidence he has good reason to believe will shed light on the commission of an alleged offense.

We are of the opinion that assignments of error numbered two, three and four are without merit.

Assignment of error number five relates to the refusal of the trial court to discharge the jury, and to grant a new trial, because of remarks made by the Commonwealth's attorney in his argument to the jury. These remarks consist of alleged, inaccurate statements as to what had been shown in evidence, and to certain remarks indicating the Commonwealth attorney's opinion of the case.

Taking up first the alleged inaccurate statements of the evidence, the record shows that counsel for the accused promptly called the attention of the court to the claim of inaccuracy. In each instance the court instructed the jury

that whether or not such testimony had been given was a question for them to decide according to their own recollection of the evidence, and that if they had any doubt, or question of what the testimony was, and so desired to refresh their memory, a stenographic transcript of the evidence would be read to them. Counsel for the accused pursued the objection no further, and did not request a reading of the transcript.

Said Judge Burks, speaking for this court, in *Sims* v. *Commonwealth;* 134 Va. 736, 115 S. E. 382, 391: "There was a dispute between counsel as to whether or not a certain statement had been made by the prisoner, and the court very properly said that whether or not such statement had been made was a matter for the jury. If it had been desired, the argument could have been suspended long enough to refer to the notes of the testimony and verify what the prisoner had stated, but no such request was made, and in view of the situation there was no error in the ruling of the court."

Coming now to the second exception in assignment of error number five, which seems to be the main reliance on the part of the accused, we find that the Commonwealth's attorney made the following remarks in his opening argument to the jury:

"I wish to state at the outset that this has been an embarrassing and a disagreeable task for me. Not only is the accused a fellow member of this bar and a brother practitioner, but he has been, together with the members of his family, a personal friend of mine. I debated about the matter and I reached the conclusion that this case was too important for me to permit any personal relationship between the accused man and me to interfere with my conduct in trying this case, and I therefore concluded it was my duty, as a representative of the people of this county, to conduct this case, and putting aside for the time all personal feeling, I want to say to you gentlemen that I have conducted it with all the vigor and ability at my command.

"I have been from the outset shocked with the severity of this case. As to the question in my mind, there is no doubt but what it is absolutely a case of first degree murder. I have

never been able to reach any other conclusion, even after hearing the testimony of the case. Of course, you gentlemen know that when a crime has been committed, it is the duty of the Commonwealth's attorney to ascertain the facts, and if he thinks they justify, to present them to the Grand Jury. Not until the accused comes here to the bar of this Court, have I any information or do I know, nor is it customary under the practice in our courts for the Commonwealth's attorney to be informed of the character or the nature of any defense that the accused is going to make. I come here, and I have to come, prepared to meet every contingency that might be advanced by any one charged with crime and be prepared to meet it and offset it."

The Court: "May I interrupt, Mr. Downing?"

Mr. Downing: "Yes, sir."

The Court: "Gentlemen, the Court feels it proper it should say to you at this time that argument of the case is, of course, not evidence in a case. The chief purpose of argument, gentlemen, is two-fold: (1) To review for you the evidence that has been introduced in the case as the counsel making the argument recalls that evidence; (2) To stimulate your thinking on that evidence by presenting to you conclusions which counsel argue should be the proper conclusions for you to form from the evidence. When the argument has sought this purpose, gentlemen, then it may be considered by the jury. If it goes beyond that purpose, then the jury should not consider it. My remarks are pointed to this. It is not at all a question for your consideration as to whether the counsel making the argument believes this or that. He is not a witness in the case. His opinion not only does not control the jury but it must not be considered in that light at all. It is only addressed to your minds, gentlemen. If your minds agree with the argument, that is one thing. If they disagree with it, that is another. Your complete duty and your serious duty is, of course, to weigh the evidence, form your own conclusions from that evidence and reach a verdict in that way."

Mr. Downing: "I desire to state to counsel, it is not my purpose or intention to in any way stray from the rules that your Honor has just laid down, and if I do so, inadvertently, I should be glad to have you call me to account."

And further in his argument the Commonwealth's attorney made these statements:

"The law provides punishment for misconduct. It has a dual purpose, not only to punish the individual for his wrongdoing but to deter others who have like criminal intentions. The law is not so much interested in the extent of the punishment as it is the certainty of it. That is what makes people good citizens and lots of times the cause of people not breaking a law is because if they do they know they are going to be punished. Therefore, I say, gentlemen, in this matter you have a very, very grave responsibility.

"I have told you as best I could, just what I think the evidence has presented and I tell you frankly that I cannot make anything but first degree murder out of it."

The Court: "Pardon me, Mr. Downing. Mr. Downing, I will call your attention again to the fact that it is not a question of what you think about it. It is a question of what the jury may think about it.

"Gentlemen of the jury, I don't like to interrupt counsel in these matters and I certainly don't do it in any unkind way. In argument, gentlemen, we become naturally interested in the argument and we cannot always hew right to the line of things, I must ask counsel not to undertake to say to the jury 'I think so and so.' The proper form is the evidence says such and such."

Mr. Downing: "Yes, sir, I apologize to the Court again for my departure from the rules."

The Court: "There is no apology necessary."

And further in his argument, the Commonwealth's attorney made this statement:

"It is rather hard to adhere entirely to the requirements when you feel the grave responsibility that I do in this cause."

It thus appears that the court, without any objection or request by the defense, of its own volition stopped the Com-

monwealth's attorney in his remarks, and in clear and simple words fully instructed the jury. No request for further instructions nor any objection thereto was made by the defense, until after the two attorneys for the defense had completed their arguments, and the Commonwealth's attorney had completed his closing argument, and the jury were about to retire. The accused contends that the remarks of the Commonwealth's attorney, who is a man of high standing in his community, were prejudicial to him, not because he was intemperate, or violent in his argument, but because the remarks were made in a calm, cold and dispassionate manner. Usually the objection is to remarks made in a rabid, angered and intemperate manner. The conduct of a trial of a man for his life should be in a calm and dispassionate atmosphere, and it is evident from the record of this trial, requiring several days, that the learned trial judge so conducted and controlled it. The attorney for the Commonwealth should be a man of character and ability, in order to perform his duties properly. That he is such a man affords no just exception by those whom his high conception of duty requires him to prosecute. The trial court regarded the language as improper, and in instructing the jury he emphasized the difference between what the jury should consider as evidence, and the mere opinion, or belief of the Commonwealth's attorney. The verdict of the jury shows that they did not share in the opinion of the Commonwealth's attorney that the accused was guilty of murder.

While this court considers the remarks of the Commonwealth's attorney objectionable, and urges attorneys not to present to juries their personal beliefs and personal opinions, it further considers, in this case, that the trial judge fully and fairly removed any erroneous impression that might otherwise have been created. Since the conclusions that attorneys draw from the evidence, are but a reflection of their own opinions as to its value and proof, there is no great distinction between expressing mere opinions and conclusions, however much it is to be desired that expressions of belief in the personal pronoun should be omitted.

The question here presented is not new to this court. It seems to be an elementary principle that improper remarks of counsel, when withdrawn by instructions of the court, are not sufficient grounds for a reversal unless it plainly appears that the jury has been prejudiced against the accused thereby. We have repeatedly held that the granting, or refusal of a new trial on such grounds, is a matter within the sound discretion of the trial court, and that such discretion will not be interfered with except when abused.

Said this court, in the case of *Harris* v. *Commonwealth*, 133 Va. 700, 112 S. E. 753, 755: "A new trial will be granted when it plainly appears that the statement of the Commonwealth's attorney complained of was highly prejudicial to the accused and that the trial court refused to instruct the jury to disregard it. *Jessie's Case*, 112 Va. 887, 71 S. E. 612.

"In *Mullins' Case*, 113 Va. (787) 792, 75 S. E. 193, and in *McCoy's Case*, 125 Va. (771) 778, 99 S. E. 644, this court granted new trials because of improper arguments by the attorney for the Commonwealth, which the trial court permitted, over protest of the prisoner's counsel, and without instructing the jury to disregard them. But we recall no case where a new trial has been granted for similar misconduct, when it appeared that the lower court sustained the objection of the prisoner and instructed the jury to disregard the statements of the prosecuting attorney .

"Jurors are supposed to be competent to understand and willing to obey the instructions of the court as to what they shall and shall not consider in determining their verdict, and as a rule the withdrawal of the objectionable remarks by the prosecuting attorney, or by the court, or by a direction of the court, is deemed to have removed the prejudice and removed the error, so that a reversal cannot be had therefor. 46 L. R. A. 648.

"Though improper language of counsel for the prosecution in argument, or otherwise, in a criminal case, has been objected to and ruled upon adversely to the defendant, and though an exception has been taken to the language, it is not necessarily a ground for reversal. The conduct of the trial being a matter

resting in the sound discretion of the trial court, that discretion will not be interfered with, except in a case of manifest abuse, prejudicial to the accused."

The general principle and rule observed in Virginia has been approved further in the case of *Seay* v. *Commonwealth*, 135 Va. 737, 115 S. E. 574, 575, wherein the following quotation is approved:

"Courts ought not to reverse cases because counsel, in the heat of argument, sometimes * * * wander a little way outside the record. If a matter of great materiality is brought into the record as a matter of extended comment, then there would be reason for setting aside the verdict. If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not to disregard their verdicts because counsel during the argument may have made some general statement not supported by the evidence." *Combs* v. *State*, 75 Ind. 215, 219.

Counsel for the accused relies on the cases of *Spencer* v. *Commonwealth*, 143 Va. 531, 129 S. E. 351, 352, and *Thurpin* v. *Commonwealth*, 147 Va. 709, 137 S. E. 528. In the *Spencer Case, supra,* the record shows a violent, intemperate and inflammatory argument made by the assistant prosecuting attorney. Said the court: "The inquiry * * * is * * * 'whether the statements were fairly calculated to improperly influence the jury,' notwithstanding the instruction of the court to disregard. * * * The question as to whether language used is prejudicial depends also upon the facts of the particular case." The court then said that the remarks of the attorney were improper, and in a case less certainly made out would raise a serious question of the propriety of declaring a mistrial, and but for the fact, as it viewed the evidence, that the result would inevitably have been the same, it would have felt constrained to reverse the case. In the *Thurpin Case, supra,* the attorney for the Commonwealth asked questions that were highly improper and collateral,—questions that were in the nature of

testimony, and allowed over the objection of the accused, and likewise made statements in his argument not sustained by the evidence. The court reversed the case for lack of evidence to support the verdict of the jury, but did not decide that the questions and arguments of the attorney for the Commonwealth constituted reversible error, although it did hold that the trial court erred in overruling the objections of the accused to such statements and argument.

Counsel for the accused cites two civil cases,—*Washington & Old Dominion Railroad Company* v. *Ward's Adm'r*, 119 Va. 334, 339, 89 S. E. 140, 142, and *Rinehart & Dennis Co.* v. *Brown*, 137 Va. 670, 120 S. E. 269. These cases do not support the contention of the accused. Said the court in the case of *Washington & Old Dominion Railroad Company* v. *Ward's Adm'r, supra*: "In the multitude of questions arising in jury trials, and in the zeal and earnestness of counsel, however well intended, it is practically impossible for the court to keep the case on trial at all times entirely free from minor irregularities and mistakes; and the course taken by the trial judge in the present instance is in accord with a common and widely approved practice. A judgment ought not to be reversed for the admission of evidence or for a statement of counsel which the court afterwards directs the jury to disregard unless there is a manifest probability that the evidence or statement has been prejudicial to the adverse party. A different rule would result in fixing an intolerable handicap upon the *nisi prius* courts."

In the case of *Rinehart & Dennis Co.* v. *Brown, supra*, the attorney for the plaintiff, in the court below, deliberately and insistently brought to the attention of the jury, not only once but several times, against instructions of the court, the fact of insurance held by the defendant. The court, in that case, was of the opinion to reverse the trial court, because the evidence was not sufficient to warrant a verdict in favor of the plaintiff, but also held that under the particular facts of that case, the action of the attorney for the plaintiff was improper. The facts clearly showed that the continued and persistent

efforts to get before the jury the fact of insurance, were highly prejudicial to the defendant.

The latest case cited in Virginia is that of *Funk* v. *Commonwealth*, 163 Va. 1014, 175 S. E. 861. In that case, the attorney for the Commonwealth made certain objectionable remarks in his opening statement to the jury. The court directed him to stop, and instructed the jury not to consider the statement. This court held that as the trial court promptly corrected the error, there was no reason to think that the statement was calculated to improperly influence the jury against the accused, and quoted with approval the general principle expressed in *Spencer* v. *Commonwealth, supra,* and declined to reverse the judgment.

We, therefore, conclude that there is no merit in assignment of error number five.

There was sufficient evidence to justify the verdict of the jury, the jury were fully and fairly instructed on the whole case, and as the accused has had a fair trial upon the merits, we are, for the foregoing reasons, of the opinion to affirm the judgment of the trial court.

*Affirmed.*