# Richmond

CATHERINE ELIZABETH SANDERSON v. COMMONWEALTH OF VIRGINIA.

June 16, 1958.

Record No. 4797.

Present, All the Justices.

The opinion states the case.

*Alfred H. Griffith* and *Paul A. Holstein,* for the plaintiff in error.

*A. S. Harrison, Jr., Attorney General* and *Reno S. Harp, III, Assistant Attorney General,* for the Commonwealth.

Case submitted on briefs.

Buchanan, J., delivered the opinion of the court.

The defendant, Catherine Elizabeth Sanderson, on an indictment charging her with the murder of Andrew Morrison Franklin, Jr., was tried before a jury, found guilty of murder in the second degree and her punishment fixed at ten years in the penitentiary. From a judgment sentencing her in accordance with the verdict she obtained this writ of error and contends in her brief (1) that the Commonwealth failed to prove that she committed any criminal offense, and (2) that reversible errors were committed during the trial.

The deceased, Franklin, was shot and killed by the defendant in the latter's home in the city of Buena Vista in the evening of October 29, 1956. Sometime in the afternoon of that day Franklin and a woman named Margaret VonBassion went to the home of the defendant on a friendly visit. Defendant's home was a two-room house comprised of a living room and kitchen. These three persons spent the afternoon together looking at television and drinking wine. They were the only persons present during the afternoon and up to the time of the shooting, which occurred around seven o'clock in the evening.

The defendant did not testify at the trial and the only account of the shooting was given by Mrs. VonBassion, called as a witness by the Commonwealth. Her husband had divorced her on the ground of adultery with Franklin and she had been living with Franklin since the divorce. Her testimony on direct examination was to this effect:

While the three of them had been drinking wine during the afternoon nobody was drunk or "the least bit intoxicated". Just prior to the shooting the three of them were in the living room watching television. Franklin was sitting in a chair and she, the witness, was seated on a stool between his knees. The defendant was sitting on a sofa. Franklin and the defendant were "kidding" each other, the wit-

ness did not remember what about, but there was no anger as far as she could see. The defendant said to Franklin, "If you fool with me, I'll blow your brains out," and reached under a pillow on the sofa, got a pistol and pointed it at Franklin. To get out of the way the witness moved from her position between Franklin's knees and went toward the kitchen door. She said as she went her back was to the other two "and when I turned around, I saw the fire from the gun but, undoubtedly, he never moved out of the chair". After the gun fired she saw Franklin grab his stomach and heard him say, "Oh, baby, I'm shot".

She was asked whether Franklin had struck the defendant and she said no he had not, and she did not recall that Franklin had been near enough to her to strike her, nor did Franklin threaten the defendant or indicate that he was trying to do her any harm; there was, she said, no argument of any serious nature, "It was just a lot of kidding backwards and forth like we always did".

She pointed to objects or persons in the courtroom as representing the distance between the defendant and the deceased when the shot was fired, and it is indicated in the transcript of the evidence that this distance was about ten feet.

Franklin died in a hospital two days after the shooting. The bullet had entered about the middle of his abdomen and ranged upward at an angle of about forty-five degrees, according to the estimate of a doctor.

Shortly after the shooting a police officer found Franklin lying on the floor in a house across the street from defendant's home. The officer went across the street to defendant's house, which was in darkness. The doors were locked, there was no response to his knocking and he could not gain entrance. He went back later and with help was able to enter the back door. He found defendant sitting on the edge of a bunk in the kitchen and found the pistol in a drawer where she told him it was. One shot had been fired from it.

On cross-examination Mrs. VonBassion was frequently vague as to incidents about which she was questioned. She was asked if it wasn't true that Franklin said to the defendant, "You yellow-faced bitch. I'll break your god damn neck," and that she, the witness, jumped in between them and said, "You're not going to treat Catherine like that". She replied, "It could be". She recalled that the defendant told Franklin that he wasn't going to hit her, the witness, in defendant's house, but she said this was before the shooting and it

does not appear in which room this occurred. She said that nothing happened serious enough to cause the shooting. She testified that when they were in the kitchen Franklin had hit her, the witness, and knocked her against the kitchen cabinet; that she got up holding her head as if her neck was injured, whereupon the defendant said to Franklin, "what are you trying to do, break that girl's neck," to which he replied, "I'll break your god damn neck, too," and she guessed, but was not too sure, that that was when she stepped between them and told Franklin he was not going to treat Catherine like that.

She admitted that ten days after the shooting she signed a written statement in which she said, in part:

"* * I don't know how the gun went off. He was sitting in the chair and she was on the couch. Before she got the gun, Franklin had pushed me playfully, he said to her 'I'll break you neck.' All of this was said in fun. He laughed and Katherine laughed. When she got the gun I didn't think she was going to pull the trigger. I don't think she did either. She didn't seem to realize it happened. I said, before the gun went off 'You're not going to treat Katherine like that'. And it seems like I stepped between them. That's as far as I remember."

The defendant, as stated, did not testify but introduced testimony to the effect that she had a good reputation as being a law-abiding citizen.

It is clear that the evidence, viewed as it must now be in the light most favorable to the Commonwealth, amply supports the verdict of the jury. It shows that the defendant shot and killed deceased when under no necessity to do so and without any other reason to excuse or explain her act. On the evidence the jury was clearly justified in rejecting the theory of self-defense which was presented to it by instructions given for the defendant in language which was highly favorable to her. The evidence furnished no ground on which the jury could properly have found her guiltless on the theory of self-defense, and no other theory was advanced for her.

Defendant's counsel argue next that the court erred in giving six instructions for the Commonwealth which submitted to the jury questions of murder in the first and second degree, defined the elements of those offenses, including legal malice, and stated the applicable presumptions arising on killing with a deadly weapon.

No question is raised as to the wording of these instructions or as to the correctness of the principles stated in them. The objection to

them was only on the ground that the evidence was insufficient and inadequate to justify the giving of any instruction on murder of either degree.

A mortal wound inflicted with a deadly weapon in the previous possession of the slayer without any, or upon very slight provocation, is *prima facie* first-degree murder and casts upon the accused the necessity of proving extenuating circumstances. *Scott* v. *Commonwealth,* 143 Va. 510, 129 S. E. 360; *Thomas* v. *Commonwealth,* 186 Va. 131, 137, 41 S. E. 2d 476, 479. On the evidence before the jury it was proper to submit to it the question of whether this presumption was applicable and whether any extenuating circumstances had been shown, particularly in view of the evidence that just before the defendant reached under her pillow for the pistol she said to Franklin, "If you fool with me, I'll blow your brains out".

Likewise it was proper to instruct the jury as the court did that every homicide is presumed to be murder in the second degree, with the burden on the Commonwealth to elevate the offense to murder in the first degree. *Adams* v. *Commonwealth,* 163 Va. 1053, 1059, 178 S. E. 29, 31; *Thomas* v. *Commonwealth, supra,* 186 Va. at 138, 41 S. E. 2d at 479.

In the face of evidence which disclosed no necessity or excuse for the killing it was plainly in order to instruct the jury on these presumptions which are long established principles of the criminal law.

■ Defendant likewise argues that the court erred in refusing to give her Instruction E, which would have told the jury it might consider the reputation of the deceased for being a person of violent and turbulent disposition; and her Instruction F, to the effect that the defendant could repel force by force in defense of her person or habitation against one who manifestly intended and endeavored by violence to commit a known felony on either. A sufficient answer to this contention is that there was no evidence that required the giving of these instructions. Furthermore, the court gave for the defendant three instructions which fully explained the law of self-defense, as well as three others which set forth in full substance and detail the rules as to the burden of proof and the presumption of innocence. The defendant did not suffer conviction because of any error in regard to instructions to the jury.

Another assignment is that the court erred in limiting defendant's counsel to thirty minutes for argument. It would seem to be sufficient in view of the brevity of the evidence. Moreover, no specific request

was made for additional time and no exception was taken to the limitation suggested by the court.

Finally, the defendant contends that a mistrial should have been declared because in the closing argument of the Commonwealth's attorney he said that punishment could not be justified "merely to spank an individual for the wrong * * done; punish her as you will and you never can pump life and breath into Franklin again. And that's not the main purpose of punishment and it could never be justified on that ground alone. There is a far greater purpose and effect of punishment. Are you going to say to others in your community that if you do this type thing * * you are going to be called to the bar of justice and you are going to have to answer for that crime * *. I submit to you that this is your opportunity to let the word go abroad in your community that you must pay at the bar of justice of this Court."

Defendant's counsel objected on the ground that "He is making her an example for other persons in this community and actually, by innuendo, for the other cases pending in this community." Thereupon the court instructed the jury to disregard any part of the argument which would tend to suggest that they make an example of the defendant, and to truly and justly try her on the evidence in the case.

If the Commonwealth's attorney went beyond the limits of permissible argument, which is at least open to question, he did not go very far, and if he took the jury with him on his journey the court by its instruction brought them safely back within the bounds of their duty. The incident involved no prejudicial error. See *Braxton* v. *Commonwealth*, 195 Va. 275, 278, 77 S. E. 2d 840, 842; *Trout* v. *Commonwealth*, 167 Va. 511, 522, 188 S. E. 219, 224.

For the reasons stated the judgment below is

*Affirmed.*